[Civil No. 4407.   Filed December 8, 1941.]

[119 Pac. (2d) 938.]

MARY GRAVES BROWN, Appellant and Cross-Appellee, v. E. E. BROWN, as Executor of the Last Will and Testament of E. O. Brown, Deceased, Appellee and Cross-Appellant.

Messrs. Townsend, Jenckes & Wildman, for Appellant and Cross-Appellee.

Mr. D. V. Mulhern and Mr. B. H. Gibbs, for Appellee and Cross-Appellant.

ROSS, J.—This is an action by Mary Graves Brown against E. E. Brown, the executor of the estate of E. O. Brown, deceased, upon a verified claim against the estate. The basis for plaintiff's claim is that she and decedent were husband and wife; that during cov-

erture she joined with her husband in executing a note for $5,000, bearing interest at 7% per annum, and a mortgage on her separate property to secure the same; that said mortgage was foreclosed and her property taken and sold in execution thereunder in satisfaction of the judgment, which amounted to $6,239.04, including interest, costs and accruing costs, and costs of sale under the execution. The claim, in due form, was on July 6, 1938, presented to the executor and by him rejected.

The defense consists of a general denial and an answer in the nature of a counterclaim for goods, wares and merchandise defendant alleges his intestate furnished plaintiff between December 1, 1929, and November 14, 1936, amounting to $3,228.09.

The case was tried without a jury and judgment was entered that plaintiff take nothing by reason of her complaint, and that defendant recover nothing on his counterclaim, and that each party pay his own costs. Both have appealed from the judgment.

We consider plaintiff's appeal first. Plaintiff and the decedent intermarried June 11, 1928. Both had been married before and each at the time had his separate property, the wife owning a citrus orchard and operating a guest ranch, and the husband owning and operating, in Scottsdale, an ice plant. He owned cotton ranches and cattle ranches, which he operated, and he was interested in the local Scottsdale bank and the light and power company. Among the property owned by the wife at the time were Lots 10, 11 and 12 in Block 1 of the Town of Scottsdale, which lots were vacant and unimproved, of the value of $1,200 to $1,500. During the years 1928 and 1929 the husband constructed on said lots a home, known as the "Green House," at a cost of something like $12,000, and soon thereafter they moved into it and occupied

it for something less than four years as their home. The only evidence as to the reason the husband built said home is that he had *promised* to do so.

On August 1, 1931, E. O. Brown and the plaintiff, his wife, executed and delivered to the State Securities Corporation their joint promissory note for the sum of $5,000, with interest at the rate of 7% per annum until paid, and, as security for the payment of such note, executed and delivered a realty mortgage upon said Lots 10, 11 and 12 of Block 1 of the Town of Scottsdale. Subsequently, in due course, the note not having been paid, the mortgage was foreclosed and the property sold as indicated in the claim filed against the estate. The theory upon which the plaintiff presented a claim against the estate of E. O. Brown is that she was a joint maker of the note and that having paid it out of her separate property she is entitled to contribution from such estate.

We think the rule is well settled that, where one of two obligors equally bound pays off and discharges the obligation, he is entitled to recover from the other the proportion that he was obligated to pay. The rule is well stated in 13 American Jurisprudence 6, section 3, as follows:

"The principle of contribution is equality in bearing a common burden. The general rule is that one who is compelled to pay or satisfy the whole or to bear more than his just share of a common burden or obligation, upon which several persons are equally liable or which they are bound to discharge, is entitled to contribution against the others to obtain from them payment of their respective shares. In other words, when any burden ought, from the relationship of the parties or in respect of property held by them, to be equally borne and each party is in *aequali jure,* contribution is due if one has been compelled to pay more than his share. The doctrine is founded not upon contract, but upon principles of equity, and assists in the

fair and just division of losses, preventing unfairness and injustice."

■ There is some question as to whether the $5,000 note and mortgage signed by the husband and wife was a community debt or the separate debt of the husband, but we think that it makes no difference since, when the wife signed the note jointly with her husband, she became obligated equally with him for its payment. It might be that if it were a community debt, it would be a first charge against the community property but, if the community were unable to pay the note, then the separate property of the signers would be obligated to pay it. It seems clear that, if the home property known as the "Green House" were the separate property of the plaintiff, she is entitled to contribution.

■ There is no evidence as to the circumstances under which this home was constructed on plaintiff's lots except plaintiff's statement that E. O. Brown promised (she doesn't say when) to build her a home there. We think it can make no difference whether such promise was in consideration of marriage, or for love and affection he sustained toward his wife; either would have been a good consideration. The rule of law governing such a situation, as announced by this court, is found in *Ammerman* v. *Crozier,* 37 Ariz. 181, 291 Pac. 995, wherein we said, quoting from 31 Corpus Juris 34, section 1123:

" 'As a general rule, when the separate funds of the other spouse or the community funds are expended in improvements on the separate property of one of the spouses, the title to the improvements follows the land, in the .absence of any specific agreement to the contrary, the equities of the parties being balanced by mutual credits and debits between the several estates involved. Improvements made upon the separate

property of the spouse with the use of his separate funds are separate property.' "

See, also, *Horton* v. *Horton*, 35 Ariz. 378, 278 Pac. 370. Under this rule, the lots being the separate property of the plaintiff, the improvements put thereon became a part of the realty and also the separate property of the plaintiff.

Since it appears plaintiff's separate property was taken in satisfaction of the note and mortgage, whereas one-half thereof should have been paid by the decedent, it would seem equity would require that his estate should pay to plaintiff his one-half of such indebtedness. We therefore conclude that the court erred in dismissing plaintiff's complaint.

We now consider defendant's appeal. The counterclaim of defendant is for goods, wares and merchandise allegedly sold to plaintiff from December 1, 1928, to November 14, 1936, over almost the entire married life of the parties. E. O. Brown died October 25, 1937. He had a general store in Scottsdale prior to July 1, 1929, but after that date until November, 1933, was not in the mercantile business. Whether he was in the mercantile business after 1933, is not shown. His son Ellsworth Brown and one Charles M. Achauer had the store under lease during the interim. It seems that the account against plaintiff, which was introduced in evidence, was for goods, wares and merchandise the decedent bought of Brown and Achauer, or from other merchants in Scottsdale or elsewhere, and delivered, or caused to be delivered, to plaintiff's home or premises for her use. And, although decedent paid the sellers for such goods, he kept an account thereof in which he was credited with the purchase price and plaintiff was debited with it. There is no evidence that plaintiff ever purchased such articles from her deceased husband or that he ever sold her any goods,

wares and merchandise, nor is there any evidence that he ever told plaintiff he was keeping an account of what he furnished her and expected her to pay therefor. The evidence to the contrary is that plaintiff was never notified during her husband's lifetime that he was keeping an account of what he furnished her or that he expected her to repay him therefor.

It is also shown that during the time the account was kept, decedent and plaintiff were living together, either at the home or at one of plaintiff's rental guest houses, and that for his board and keep he was charged nothing. It also appears that during such time one of his minor sons lived with them for as long as eight months, for which plaintiff received no compensation and made no charge.

It seems clear that the counterclaim was properly disallowed.

The judgment of the lower court is reversed as to plaintiff and the cause remanded with directions that she be given judgment for one-half of her claim of $6,239.04, or for $3,119.52, the proportion the estate owes her, with legal interest from July 6, 1938; and as to defendant the judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.