233 P.2d 459

**LAWSON v. RIDGEWAY.**

No. 5218.

Supreme Court of Arizona.

June 25, 1951.

Rehearing Denied Sept. 25, 1951.

James M. Howsare and John W. Ross, of Tucson, for appellant.

Hall, Catlin & Molloy, of Tucson, for appellee.

LA PRADE, Justice.

Judgment, in the sum of $8,210.98, was rendered in this case in favor of appellee Dorothy J. Lawson Ridgeway, as administratrix of the estate of Bessie Brainard Lawson, and against Kathryn Wright Lawson as executrix of the estate of John W. Lawson. In addition to the money judgment it was adjudged that each of these estates owned an undivided one-half interest in Lots 1, 2, 3, and 12, in Block 5 of Mitman addition to the township of Oracle, Pinal county, Arizona, and provided that these lots should be partitioned according to law between the two estates.

The appellee Dorothy Lawson Ridgeway, plaintiff below, is the sole surviving heir of her mother, Bessie Brainard Lawson, who was the first wife of the deceased John W. Lawson. The appellant Kathryn Wright Lawson, defendant below, is the surviving widow and second wife of Lawson. Bessie Lawson died, a resident of Pinal county, September 1, 1929. No attempt was made to probate her estate until December 2, 1946, when proceedings were instituted in Pinal county. On January 23, 1932, John Lawson, then a widower, married Kathryn. John Lawson died on October 22, 1946, a resident of Pima county, Arizona, and

thereafter, on November 25, 1946, appropriate proceedings were instituted to probate his estate in Pima county.

The daughter Dorothy, in her capacity as administratrix of the estate of her deceased mother, instituted the action resulting in the judgment from which this appeal originates, claiming that the separate estate of her father was indebted to the estate of her mother in the sum of $9,300 on account of community funds of Bessie and John that had been used by the husband to improve his separate property during the existence of the marriage.

The facts as found by the trial court, and we believe amply supported by the evidence, disclose:

1. That John married Bessie on June 14, 1913; that at this time he was a resident of the small and isolated community of Oracle.

2. That shortly before this marriage he had acquired Blocks 13, 14, 15, 16, and 17, all in Oracle townsite and all of which was unimproved except for a small store building and a frame residence.

3. That during the sixteen years that this marriage continued Mr. Lawson constructed, on some of his separate property, (a) a residence for himself and wife; (b) two 5-room rental houses; (c) three 3-room rental houses, and (d), provided a water system through the use of wells, windmills, etc.

4. That the cost of these improvements was $16,422 and that the value of these improvements at the time of the trial exceeded the cost.

5. That during thirteen years of this marriage, Lawson and one Leslie C. Terry were actively engaged in the operation of a general merchandise store as partners; that each of them took an active part in its operation and management, and Lawson, in addition to waiting on customers making purchases, served as bookkeeper.

6. That the partners each drew out of the partnership approximately $150 per month for living expenses and that over the 13-year period from 1913 to 1926, in addition to their regular monthly withdrawals, divided profits of approximately $100,000—$50,000 to each.

7. That Mr. Lawson deposited all of his profit withdrawals from the partnership in divided profits of approximately $100,000—a joint bank account maintained by himself and wife at Tucson; that the profits drawn by Lawson from the partnership "were moneys attributable to his personal efforts and business acumen and were not due to a natural increase in the capital investment."

8. That the building program conducted upon the separate property of Lawson was financed through the partnership and charged to the account of Lawson. When the distributable profits due Lawson were insufficient to pay his indebtedness to the partnership, the deficiency was made up by

checks in favor of the partnership drawn by Lawson on the joint bank account of himself and wife.

8. That the building program conducted upon the separate property of Lawson was financed through the partnership and charged to the account of Lawson. When the distributable profits due Lawson were insufficient to pay his indebtedness to the partnership, the deficiency was made up by checks in favor of the partnership drawn by Lawson on the joint bank account of himself and wife.

9. That no effort was made by Lawson to keep separate the transactions pertaining to his separate property and transactions pertaining to the community property of himself and wife Bessie; and that as a result of the failure to keep separate the transactions of these two estates there was such a commingling of the property of himself and his wife that it was impossible to determine what portion of the improvements upon the separate property of Lawson was paid for out of money of his separate estate and what portion was paid for out of community funds.

Upon these findings of fact the court concluded that Mr. Lawson's share of the income derived from the partnership of Terry & Lawson was community income of himself and wife Bessie, and that this income supplied the finances for the improvements which were constructed on the separate real property of the husband; that the estate of the deceased wife was entitled to reimbursement to the extent of one-half of the increased value, to be secured by a lien, and it was so ordered.

With reference to the second part of the judgment, the court found that the community of John and Bessie owned Lots 1, 2, 3, and 12, in Block 5 of Mitman addition to the town of Oracle, having been acquired during coverture, and ordered a partition thereof. More detailed explanation as to this part of the judgment will be made later on.

■. By way of illumination of the above facts as found by the court, it should be disclosed that sometime prior to 1911 Mr. Lawson individually operated the country store referred to. In 1911 he took in as a partner one Leslie C. Terry. This partnership had for its objective the continuation and operation of the general merchandise store which Lawson had previously operated, and continued until the fall of 1926. Lawson's capital contribution to the partnership was $2,400. The partnership paid rent to Lawson for the use of the store building. Not being able to discover the population of Oracle in 1913 at the time of the marriage, we do take judicial notice of the fact that the official census for 1930 fixed the population at 386. It is also a matter of common knowledge that in 1913 Oracle was no more than a "wide spot" on a dirt road leading through mountainous country, where in the back hills there were some miners and cattlemen. We believe that this background,

coupled with all of the other evidence in the case, amply justified the trial court in finding that whatever profits Mr. Lawson made were attributable to his personal efforts rather than to any earned increment referable to his capital investment. For all of his industry, using the small capital that he had to start with, his monthly earnings, including drawing account and distributive share from the partnership, during the thirteen years that the marriage continued, amounted to approximately $475 per month.

The assignments of error of which we will take notice and which really raise the essential errors complained of, are that the court erred: (1) in finding that the profits from the partnership of Terry & Lawson were community property; (2) in finding that there was such a commingling of the separate property of John Lawson with the community property of himself and Bessie that the whole thereof became community property; (3) in failing to appoint a master to investigate financial dealings of John Lawson and the community; and (4) in ordering a partition of the community real estate for the reason that the court, sitting as a court of law, had no jurisdiction to order partition of real estate already under the jurisdiction of the same court sitting in probate.

█ Defendant below (administratrix of estate of John) by way of counterclaim, sought judgment against the estate of Bessie, represented by plaintiff, for the funeral expenses arising out of the burial of Bessie Lawson, claiming that these expenses had been paid by the survivor of the community, John Lawson, and that under the statute it is contemplated that such funeral expenses shall be paid out of the estate funds of the deceased. Being denied judgment on this count, error is assigned thereon. There was no showing whatsoever as to whose funds were used to pay the funeral expenses of Bessie Lawson. The burden was upon counterclaimant to prove that these expenditures were paid for by John Lawson out of his separate estate. There is no presumption, as contended by appellant, that these expenses were paid out of the separate estate of John Lawson. For want of proof the counterclaim was correctly determined and this assignment is without merit.

█ In support of the foregoing assignment No. 1, appellant offers this proposition: "All property owned by spouses at time of marriage, and the rents, issues and profits thereof, are their separate property, and where the spouse is the owner of a partnership interest and devotes time and energy to the partnership business, for which time and energy the spouse receives a monthly stipend or salary, that salary, in absence of evidence of the value of the services, is deemed to be the true worth of the services and the profits from the business are the issues and profits from separate property and remain separate property of the spouse." The assignment and this proposition of law are without merit

for the reason that it is the rule in this jurisdiction that all profits from a business operating on the separate capital of a spouse are cast into the community or the separate estates depending upon whether the profits "are the result of the individual toil and application of the spouse, or the inherent qualities of the business itself." Rundle v. Winters, 38 Ariz. 239, 298 P. 929, 931. To the same effect see Estate of Torrey, 54 Ariz. 369, 95 P.2d 990; Anderson v. Anderson, 65 Ariz. 184, 177 P.2d 227; and Porter v. Porter, 67 Ariz. 273, 195 P.2d 132. It is appellant's contention that, since Lawson had a partner in the partnership business, it cannot be said that Lawson's profit arising from his efforts devoted to the promotion of the partnership affairs resulted from his individual toil and application. Under the factual situation here we believe that this asserted distinction is most tenuous. The monthly drawing account of Mr. Lawson from the partnership was in no manner indicative of the worth of his efforts in promoting the partnership affairs and was no true measure of the value of the services performed by him. Lawson's situation was entirely different from that of Porter in the case of Porter v. Porter, supra, where Porter as a young man inherited his father's interest in an extremely large, long-established and wealthy mercantile and manufacturing establishment, where he was employed with a hundred or more other employees and paid a salary commensurate with his services as an employee of the partnership. In that case it was readily discernible that the profits that were distributed to him, in addition to his salary, were the result of large capital under the guidance and management of older partners and skilled management personnel for which he was only nominally responsible.

■■ The suggestion that the drawing or salary account of a partner is in every instance the extent of the contribution of the community of which he is a member to the partnership business, in the absence of proof to the contrary, is to suggest that such drawings or salaries from a partnership are usually set by the partners with the thought that the amount drawn fairly represents the value of the personal services rendered. We believe it to be a matter of common knowledge that such drawing accounts are normally determined by other factors such as the amount that can be drawn out of the business regularly without financially embarrassing the business and by the criterion of how much is needed for normal and regular living expenses of the partners. It would certainly be a rare case when such drawing accounts were determined upon the basis of the value of the personal services rendered with the thought that anything over and above that would be a return from capital investment. Lawson's average yearly division of profits of $3,900 would have constituted approximately 160% per annum on his capital investment of $2,400, which is

preposterous to conceive of as a financial attribute of his capital investment in the wayside country store. See In re Buchanan's Estate, 89 Wash. 172, 154 P. 129. These observations, we think, lead to the conclusion that Lawson's share of the gains and profits from the partnership were produced by his personal efforts, though aided in a measure by his original investment, and became community property.

It is the rule in this jurisdiction that "When separate and community funds are mingled, the commingled funds are presumed to be community, and the burden is upon the one claiming them or any portion thereof to be separate to prove such fact and the amount by clear and satisfactory evidence." Rundle v. Winters, supra. The defendant in this instance was not able to sustain this burden. The record before us, which is most voluminous, discloses as found by the trial court that there was a thorough confusing and commingling of the separate and community property. It is very apparent that Mr. Lawson and his wife treated the income from his partnership as the proceeds of community endeavor, and in a situation of this kind the character of the income changes in accordance with the intention of the parties. Rundle v. Winters, supra, citing cases.

It being the law that property takes its character as community or separate estate at the time of its acquisition, Pendleton v. Brown, 25 Ariz. 604, 221 P. 213; Horton v. Horton, 35 Ariz. 378, 278 P. 370; and Lovin v. Woodward, 45 Ariz. 105, 40 P.2d 102, these vacant lots that belonged to Mr. Lawson and which were improved with community funds retained their character as his separate property, Brown v. Brown, 58 Ariz. 333, 119 P.2d 938, and thus plaintiff had no course to pursue other than the one she did in pressing the claim of the estate of her deceased mother against the estate of her deceasd father for reimbursement.

We believe that the applicable rule of law is set forth in 11 Am.Jur., Community Property, section 40, wherein it is said: *"Reimbursement of Expenditures.*—As a general rule, the separate estate of a member of the community must reimburse the community for any proper improvements made in good faith upon the separate estate with community funds. * * *. Where, however, a husband uses community funds to improve his own separate property, reimbursement is granted to the wife upon the theory that to permit him to appropriate the community property under his management to his own separate use would operate as a fraud upon her. * *" We believe that the following cases furnish sufficient authority and good reason for the application of this rule. See Legg v. Legg, 34 Wash. 132, 75 P. 130; Horton v. Horton, supra; Rothman v. Rumbeck, 54 Ariz. 443, 96 P.2d 755; Conley v. Moe, 7 Wash.2d 355, 110 P.2d 172, 133 A.L.R. 1089; Jones v. Davis, 15 Wash.2d 567,

131 P.2d 433; Blaine v. Blaine, 63 Ariz. 100, 159 P.2d 786, 791.

The appellant directs our attention to the following statement in the case of Blaine v. Blaine, supra, which reads: " * * * Furthermore, there is a presumption that where separate and community funds are commingled in one account, payments out of that account for charges against separate property or for separate uses are deemed to be paid out of the separate funds. In re Woodburn's Estate, 190 Wash. 141, 66 P.2d 1138; Guye v. Guye, 63 Wash. 340, 115 P. 731, 37 L.R.A.,N.S., 186; White v. White, 26 Cal. App.2d 524, 79 P.2d 759." We do not believe that the statement of law just quoted was intended to be taken in as broad a sense as appellant is attempting to have it construed. The ultimate holding in the Blaine case was opposite to such an interpretation, in that payments made out of commingled funds to pay premiums on insurance policy standing in the name of the husband was held to entitle the community to reimbursement and a lien on the policy. In any event, there is no occasion here to resort to any presumption as to the character of the funds used to improve the husband's separate property for we have made it clear that this record establishes that community funds only were used to improve his separate property.

The measure of the lien or right to reimbursement in such a case as this is the increase in value to the property and not the amount spent. See 41 C.J.S., Husband and Wife, § 510–(5), Claims Arising from Improvements on Separate Property. This is the rule that is enunciated in the following cases, Provost v. Provost, 102 Cal.App..775, 283 P. 842; Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620; and In re Carmack's Estate, 133 Wash. 374, 233 P. 942. The judgment should have been for one-half of the sum of the present value of the improvements, which as established by uncontradicted expert testimony, was $16,-519, the one-half being $8,259.50, which slightly exceeds the amount fixed by the court. The error, if any, was in appellant's favor.

It is in connection with this portion of the judgment that the appellant complains of a failure of the court, at her request, to appoint a master to investigate the financial dealings of John Lawson with the community. Since we have determined that all of the income was community property there was no occasion to have an audit made to determine its particular source or disbursement. The community was in existence in excess of sixteen years. The control records, being the ledger sheets from the partnership account, were available for approximately ten years only. What ledger sheets were available were admitted in evidence and conclusively established the costs of the improvements to the property of Mr. Lawson. If the plaintiff had been asserting a claim for a further and additional accounting other than

the improvements on the separate realty, it would have been her burden to produce the records and prove any additional claims she had. This she did not do, being content with claiming the one-half of the increased value in. the improvements. In connection with this assignment of error complaining of the court's failure to appoint a master and secure an audit of the dealings of John Lawson with the community, appellant has also complained of the ruling of the court in failing to admit into evidence the personal books, memoranda, records, writings, deposit slips, etc. of John Lawson. We have examined these and for the most part they indicate that Mr. Lawson was a methodical man who meticulously recorded his financial transactions from day to day, but having determined that all of the income of Mr. and Mrs. Lawson, including the rentals, was community property, there was no occasion to admit these miscellaneous records. The income all being community, there was nothing to segregate. The particular source and disposition of each dollar of income was not in issue once the court had determined that all of the income was community.

The last proposition for consideration is the contention that the superior court of Pima county, sitting in probate, having taken jurisdiction of the estate of John Lawson, deceased, retains jurisdiction with full power to make partition of the land without interference from the same court sitting as a law court though having concurrent jurisdiction. The action for partition was instituted by Dorothy Lawson Ridgeway in her individual capacity and as administratrix of the estate of her deceased mother. In plaintiff's amended complaint she alleged that she was the owner in fee simple of an undivided one-half interest in and to the lots that had been theretofore owned by her father and mother as community property; that her father at the time of his death was the owner of an undivided one-half interest therein; that the defendant Kathryn, under the will of John Lawson, was the devisee of the father's interest, and prayed that the court decree that she was the owner in her sole and separate right of an undivided one-half interest in said property; that the court determine the interest of Kathryn under the will, and all questions of law or equity affecting the title, and grant plaintiff such relief in respect thereto to which she was entitled.

By its findings the court found that these lots had been acquired during coverture and were community property; that Bessie Lawson died September 1, 1929, dissolving the community, and that plaintiff was the only child of the deceased Bessie and John, and that there were no outstanding claims against the community estate of John and Bessie. It then concluded that the interest of Bessie in said lots was not subject to probate as being part of her estate, and that since all of the parties were before it that the proceedings presented a proper

situation for a partition. Then, for some reason not appearing of record, the judgment fails to follow the findings of fact and conclusions of law in that (1) it adjudged that an undivided one-half interest in the lots vested in plaintiff "as administratrix of the estate of Bessie Brainard Lawson, deceased", subject to probate and final distribution of said estate; (2) that an undivided one-half interest vested in defendant as executrix of John's estate subject to probate and final distribution in that estate; and (3), that the property be partitioned according to law between the two estates.

The law on the subject of devolution of community property, in existence at the time of the death of Bessie Lawson, is contained in section 985, R.C.A.1928, and now appearing as section 39–109, A.C.A. 1939. The section reads: *"Descent of community property.*—Upon the death of a husband or wife one-half of the community property shall go to the survivor, and the other half is subject to the testamentary disposition of the decedent, and in the absence of such disposition goes to his or her descendants, equally, if such descendants are of the same degree of kindred to the decedent, otherwise according to the right of representation; and in the absence of both such disposition and such descendants, goes to the survivor. The community estate passes charged with the debts against it." The antecedent of this

section appeared as paragraph 2124 of the Revised Statutes of 1901, though not in the identical language. Construing this latter section in the case of Estate of Wilson, 19 Ariz. 205, 168 P. 503, it was held, in the absence of a showing of community debts, that upon the dissolution of the community by the death of the wife the decedent's interest in the real estate did not become a part of her estate but immediately vested in the surviving husband and daughter, one-half to each as tenants in common, Roberson v. Teel, 35 Ariz. 166, 171, 275 P. 2, and that there was no right to administer the community. See Home Ins. Co. v. Latimer, 33 Ariz. 288, 264 P. 103; Roberson v. Teel, supra; Nowland v. Vinyard, 43 Ariz. 27, 31, 29 P.2d 139; Johnson v. Jones, 55 Ariz. 49, 97 P.2d 933; In re Monaghan's Estate, 65 Ariz. 9, 13, 173 P. 2d 107; and Hallas v. Evans, 69 Ariz. 14, 18, 207 P.2d 985.

Applying these principles of law to the present situation, we find that after the death of Bessie Lawson the plaintiff-daughter and her father owned the lots as tenants in common; likewise, upon the death of her father, plaintiff and defendant (as devisee of John Lawson) are tenants in common. There being no debts there was no purpose to administer the *entire* community estate of Bessie and John. It is only when there are debts that the executor or administrator of the estate of a decedent has the right to posses-

sion, not only of the decedent's estate but of the community interest of the survivor. Roberson v. Teel, supra.

The probate court, administering the estate of John Lawson, is and was without jurisdiction to administer the plaintiff's interest as a tenant in common in the lots. The court sitting in probate, not having jurisdiction of the entire ownership interests in the lots, is and was without jurisdiction to order any partition thereof. Its sole jurisdiction, as far as the interest of John Lawson is concerned, is to subject his interest to the payment of debts and determine upon whom it shall devolve.

The right of partition is an incident of common ownership, and specifically authorized by statute. Sec. 27–1301, A.C.A.1939. Bledsoe v. Hood, 44 Ariz. 292, 36 P.2d 564, 95 A.L.R. 1327. Plaintiff's remedy was as an individual against the defendant in her representative capacity. Roberson v. Teel, supra.

By virtue of the authority vested in this court to render such judgment on appeal as the court below should have rendered, Sec. 21–1832, A.C.A.1939, it is hereby ordered that that portion of the judgment decreeing an undivided one-half interest in the lots "vested in plaintiff Dorothy J. Lawson Ridgeway, as Administratrix of the Estate of Bessie Brainard Lawson, deceased, subject to the probate and final distribution of said estate", is modified to read as follows: "An undivided

one-half interest in said lots is vested in plaintiff Dorothy J. Lawson Ridgeway in her individual capacity." In all other respects the judgment is affirmed.

UDALL, C. J., and STANFORD, PHELPS and DE CONCINI, JJ., concur.