512 P.2d 617

**Helen HANRAHAN, Executrix of the Estate of Eugene T. Sims, Deceased, Appellant,**

v.

**Laura K. SIMS, widow of Eugene T. Sims, Deceased, Appellee.**

**No. 2 CA–CIV 1372.**

Court of Appeals of Arizona, Division 2.

July 19, 1973.

314

D'Antonio & Videen by Garven W. Videen, Tucson, for appellant.

A. Alan Hanshaw, and R. Douglas Zirkle, Tucson, for appellee.

HATHAWAY, Chief Judge.

This lawsuit is a sequel to our decision in the case of In re Estate of Sims, 13 Ariz.App. 215, 475 P.2d 505 (1970), wherein we affirmed a probate court order awarding a homestead in the decedent's separate property to his surviving spouse. Thereafter the instant litigation was commenced by the surviving spouse, appellee herein, seeking reimbursement from the proceeds derived from the sale of the subject property, to the extent of one-half of mortgage payments out of community funds during the decedent's lifetime and during the probate of his estate.

The responsive pleading of the appellant-executrix admitted the estate had been making the monthly payments on the mortgage since the decedent's death, affirmatively alleged inter alia appellee's failure to present a creditor's claim, and counterclaimed for the reasonable rental value of the premises and damages for the removal of carpeting therefrom. Appellee's reply to the counterclaim admitted removal of the carpeting.

The case was submitted to the court on the following stipulation.

"1. Counsel stipulate that the court may consider that portion of the pretrial order under Nature of the Action as being stipulated facts.

2. Counsel stipulate that a reasonable rental value of the premises will be $150 per month.

3. Defense counsel states that he has no evidence to present to the court in an attempt to show that any of the payments were made from separate assets of the decedent.

4. Counsel stipulate that the court take judicial notice of the probate file number 42489.

5. Counsel stipulate that from March 1965 through October 1965 the mortgage payments were made from payments of third parties and the court may take judicial notice of case number 86908, Sims v. Lespron.

6. Counsel stipulate that a copy of the bank accounts and mortgage payments may be attached to the Plaintiff's Memorandum to be filed and may be considered by the court as in evidence before the court.

7. The court may consider all stipulations and admissions as set out in the pretrial order.

8. Counsel stipulate that the value of the wall-to-wall carpeting which the Plaintiff removed was $900."

The pretrial order sets forth the following stipulations:

"The parties stipulate that the decedent and the plaintiff resided in the premises from August 1959 through August 1964, and that the premises were the sole and separate property of the decedent.

Parties stipulate that a tentative sale of the premises was made during 1964, which was never consummated, and that plaintiff and decedent went back into possession in August 1966 and resided together therein until December 1968 when a divorce suit was filed.

Thereafter the plaintiff resided in the decedent's sole and separate home until July 1971.

Parties stipulate that the estate made mortgage payments from estate funds from July 1969 and through the date of sale in October 1971.

Counsel admit the plaintiff and decedent were married in August 1959 and that a divorce was filed by the plaintiff against the decedent in December 1969 and that no judgment has been entered thereon.

Counsel admit the decedent died on July 10, 1969."

The court found that appellee was entitled to recover $8,503.05, one-half of the mortgage payments made by the community on the separate property of the husband and that appellant was entitled to an offset of $450, one-half of the value of the carpet taken from the premises. Judgment was entered in appellee's favor in the sum of $8,053.05.

■ Appellant initially contends that appellee's failure to file a creditor's claim brought into play the bar of A.R.S. § 14–570, subsec. A:

"All claims arising upon contracts, whether due, not due or contingent, shall be presented to the executor or administrator within the time limited in the notice to creditors, and any claim not so presented is barred forever. . . ."

We do not agree with appellant's arguments. A "claim" is a debt or demand on the *estate,* Fox v. McCreary, 103 Ohio App. 73, 144 N.E.2d 546 (1957), and the term "arising upon contract" refers to a contract to which the decedent was a party. Nat. Auto and Casualty Ins. Co. v. Ainge, 34 Cal.2d 806, 215 P.2d 13 (1950). The substance of appellee's claim for relief, although inartfully pleaded, was that community funds had been expended for the benefit of the decedent's separate estate and therefore the community was entitled to reimbursement from the proceeds of the sale of the separate property to the extent of such expenditures. Such claim for reimbursement is in the nature of an equitable lien. 42 C.J.S. Husband and Wife § 688(a). The non-claim statute does not apply to claims of equitable ownership of assets being administered, Fernandez v. Garza, 88 Ariz. 214, 354 P.2d 260 (1960); Lecky v. Staley, 6 Ariz.App. 556, 435 P.2d 63 (1967). Appellee was claiming property as her own and therefore her claim was not one against the estate but rather one against the executrix. In re Connor's Estate, 240 Iowa 479, 36 N.W.2d 833 (1949); In re Dabney's Estate, 37 Cal.2d 672, 234

P.2d 962 (1951). One seeking judicial declaration of an equitable lien and enforcement thereof is not required to file a creditor's claim as a condition precedent to maintaining the action. Grant v. De Otte, 122 Cal.App.2d 724, 265 P.2d 952 (1954).

■ We summarily dispose of appellant's collateral estoppel and res judicata arguments—res judicata is an affirmative defense and must be pleaded and proved. Lakin Cattle Co. v. Engelthaler, 101 Ariz. 282, 419 P.2d 66 (1966). Appellant's failure to raise such defense constituted a waiver thereof. Reed v. Frey, 10 Ariz. App. 292, 458 P.2d 386 (1969).

We do believe, however, the monetary judgment is erroneous. Appellee's position below was that she was entitled to recover from the executrix of the decedent's estate one-half of the total mortgage payments made from community funds for the benefit of the decedent's separate property. These mortgage payments, however, included not only payment on principal, but also interest, taxes and insurance. Appellant's position, on the other hand, was that since appellee and decedent had utilized the subject property as a family residence, thereby benefiting the community, a reasonable rental value should have been offset or, in the alternative, appellee was entitled to no more than one-half of the community funds expended to reduce the principal balance of the decedent's obligation.

Appellant relies upon the case of Lawson v. Ridgeway, 72 Ariz. 253, 233 P.2d 459 (1951) for the proposition that when community funds have been used to place improvements upon the separate property of one of the spouses, the community is entitled to reimbursement for the enhancement in value occasioned by such improvements. She argues, therefore, that appellee failed to sustain her burden since she presented no evidence of enhancement in value. Appellee cites the cases of Kingsbery v. Kingsbery, 93 Ariz. 217, 379 P.2d 893 (1963); Rothman v. Rumbeck, 54 Ariz. 443, 96 P.2d 755 (1939) and Flynn v. Allender, 75 Ariz. 322, 256 P.2d 560 (1953),

to support her position that she was entitled to recover one-half of the total amount contributed by the community. We find the factual situations in these Arizona cases readily distinguishable from the factual situation presented here. Although all reiterate the general principle that the community, when it advances funds to improve the separate property of one of the spouses, is entitled to reimbursement, following the rule laid down in the Washington case of Legg v. Legg, 34 Wash. 132, 75 P. 130 (1904), the measure of reimbursement is not uniform.

One distinguishing feature of this case is that the community was dissolved by the husband's death. Although the community of property and the rights and liabilities incident thereto cease at death, the community still exists for purposes of liquidation. 42 C.J.S. Husband and Wife § 557. On dissolution of the community by the death of either of its members, the entire community estate, and not merely the decedent's interest therein, is subject to administration when there are existing community debts. In re Monaghan's Estate, 65 Ariz. 9, 173 P.2d 107 (1946); In re Foreman's Estate, 99 Ariz. 147, 407 P.2d 102 (1965). Thus we see that if the community estate was entitled to reimbursement from the decedent's separate estate, the amount of such reimbursement merely becomes community property in the course of administration and together with the other community property, is subject to payment of community debts and expenses of administration. The effect of the judgment below in favor of appellee was to exonerate her interests, if any, in the community property from payment of community obligations. In this respect, the court erred.

In so holding, we do not say that appellee was entitled to no relief whatsoever. The probate file reflects at the time the judgment was entered, the estate assets totalled $8,421.82, and all creditors' claims and costs of administration had not been paid. The unpaid mortgage balance on the subject property in 1959 when the parties married was $13,393.83, its balance in 1964 when it was sold to third parties was $11,859.46, thus indicating that $1,524.37 of the mortgage indebtedness had been paid during this interval. In March 1965 when the Sims reacquired the subject property, the mortgage indebtedness was $11,630.86 which, at the date of sale in 1971 had been reduced to $8,937.83, indicating an indebtedness reduction of $2,693.03 during said period. Thus the amount of community funds which had been expended to increase the decedent's equity in the property was $4,217.40.

We agree with the basic proposition that the community estate was entitled to reimbursement from the decedent's separate estate for community funds expended for the benefit of the latter estate. See Annot. 54 A.L.R.2d 429 and cases cited therein. Although conceivably the situation could arise where the community estate would be entitled to share in enhancement of value of the separate estate attributable to such community expenditure, we are unable to say from the record before us that the increase in the value of the subject property is not attributable to the general trend of rising real estate values. It is a matter of common knowledge in this community that the selling price of residential property has skyrocketed in recent years.

We are of the opinion that the following principle enunciated in Gapsch v. Gapsch, 76 Idaho 44, 277 P.2d 278 (1954) should be applied:

"As a general rule where the separate property of the husband is improved or his equity therein enhanced by community funds the community is entitled to be reimbursed from such separate estate unless such funds used for improvement or enhancement are intended as a gift. The claim for reimbursement has been held to be in the nature of a charge or an equitable lien against such separate property so improved or the equity of the husband therein enlarged. It would

appear that the measure of the compensation generally is the increased value of the property due to the improvement; in instances where his equity therein has been increased through the application of community funds to the payment of the debt thereon the measure should be the amount by which such equity is enhanced. [Citations omitted]" 277 P.2d at 283.

The remedy of the possessor of an equitable lien is to come into a court of equity and have his lien recognized, declared, and if necessary, enforced. 51 Am.Jur.2d Liens § 66. An equitable lien is a charge against a particular item of property—in this case the lien of the community could be charged against only one asset of the decedent's estate, namely the residential property in question. The right to reimbursement is purely equitable, Colden v. Alexander, 141 Tex. 134, 171 S.W.2d 328 (1943), and equitable principles dictate that benefits received by the community should be considered in determining the amount of reimbursement. Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620 (1935).

A reading of the myriad of cases which have considered this reimbursement question discloses no common denominator. In fact, we note that the facts and circumstances of the individual case are determinative of the amount of reimbursement allowed to the community estate. Some courts have permitted reimbursement to the community for sums expended for taxes and interest. However, in the case sub judice since the community had the use of the property during decedent's lifetime and appellee for 18 months thereafter, it would not be inequitable to consider payment of taxes and interest a fair expenditure for the use of the premises. As noted in Horton v. Horton, 35 Ariz. 378, 278 P. 370 (1929), the community has "at most" a claim against the separate estate for the amounts contributed. We believe the circumstances presented here require application of the equitable maxim that he who seeks equity must do equity.

We hold, therefore, that appellee was entitled to no more than a declaration that $4,217.40 (enhancement of the decedent's equity) of the proceeds of the sale of the decedent's separate property, belonged to the community and that such sum be administered as community property. For the foregoing reasons, the judgment is reversed and the cause remanded for further proceedings not inconsistent herewith.

KRUCKER and HOWARD, JJ., concur.