597 P.2d 194

**Martin L. TESTER, Petitioner/Appellant,**

v.

**M. E. Hercilia TESTER, Respondent/Appellee.**

**No. 2 CA–CIV 3122.**

Court of Appeals of Arizona, Division 2.

May 18, 1979.

Rehearing Denied June 27, 1979.

Aboud & Aboud by John Eli Aboud, Tucson, for petitioner/appellant.

William J. Redondo, Tucson, for respondent/appellee.

## OPINION

HOWARD, Judge.

This appeal seeks review of the trial court's disposition of the parties' property following a decree of dissolution of their marriage. Appellant argues the trial court erred on three issues: (1) in failing to impose a lien on appellee's separate real property equal to one-half the amount of community work and money expended on its

improvement, (2) in ordering appellant to pay $75 a month for child support and (3) in awarding appellee $5,000 as her share of his retirement benefits. We affirm the decision of the trial court on the first two issues, but find that it erred in its computation of the retirement benefits. In reviewing the evidence, we resolve any inconsistencies in the light most favorable to supporting the trial court's decision. *Noble v. Noble,* 26 Ariz.App. 89, 546 P.2d 358 (1976).

The Testers were married in 1960 and at the time of trial had four children, ranging in ages from 16 to 12. The parties had stipulated as to the division of their personal property and the custody of the children. The trial court ordered the husband to pay $75 a month for the one child in the wife's custody and denied her claim for spousal maintenance. It provided that the husband would have possession of the family home, held in joint tenancy, and would have responsibility for the mortgage, taxes, assessments and improvements, until the youngest child is eighteen. At that time the court ordered that the house be sold and the proceeds evenly divided between the parties. The wife was awarded $5,000 as her share of the husband's retirement benefits, securing its payment by a lien on the family home. The husband was awarded the life insurance policies on the three children in his custody. He was given responsibility for approximately $4,280 of community debts and the wife was given responsibility for approximately $203. The trial court confirmed that the wife had a separate interest in a second house which she and her retarded sister (who lived with the Testers during their marriage) had inherited from their mother.

During the 11 years between the sisters' inheriting the house and the parties' separation, the Testers lived in it for seven years and rented it for four. The mortgage, expenses and repairs were paid out of community funds and the rents received were deposited in the community checking account. The husband did most of the repairs himself, including building a patio and a new fence. He now contends that the community should have been reimbursed for the money and time spent on the wife's separate property.

■ When community funds are used to improve the separate property of a spouse, the community has a claim for reimbursement in the nature of an equitable lien on the property. *Lawson v. Ridgeway,* 72 Ariz. 253, 233 P.2d 459 (1951). The title to the improvements follows the land and the equities of the parties are balanced by mutual credits and debits between them. *Brown v. Brown,* 58 Ariz. 333, 119 P.2d 938 (1941). "The right to reimbursement is purely equitable, . . . and equitable principles dictate that benefits received by the community should be considered in determining the amount of reimbursement." *Hanrahan v. Sims,* 20 Ariz.App. 313, 318, 512 P.2d 617, 622 (1973). (citation omitted)

There is evidence that $3,000 of community funds were spent on mortgage payments. After the wife inherited her interest in the house, the parties refinanced the existing mortgage. They paid the $3,000 balance owing on it with part of the money borrowed on a second mortgage. The payments on the second mortgage were made from the community checking account and with the proceeds of a stock fund the husband had built up during the marriage at his place of employment. Thus, $3,000 of the purchase-money debt was eventually paid with community funds.

■ The community is entitled to reimbursement when community funds are spent to increase one spouse's equity in separate property. *Hanrahan v. Sims,* supra. Whether the measure of reimbursement is the amount of community funds expended or the amount by which the value of the separate property has been enhanced need not be answered here. During the years the house was rented, at least $7,590 from the rent received was deposited in the community checking account. Another $3,000 from the sale of additional separate property of the wife's was used for community purposes. These amounts can be used to set off any contribution the community made to the separate estate. *Blaine v.*

*Blaine,* 63 Ariz. 100, 159 P.2d 786 (1945). The house was originally purchased in 1959 for $9,500. Estimates of its present value range from $12,000 (the wife's estimate) to $26,000 or $30,000 (the husband's). Even using the figures and the measure most generous to the husband, the community would only be entitled to be reimbursed $9,473.68. The community has already benefited by the wife's separate property in excess of that amount.

■ Next, the husband seeks reimbursement for the work and money the community expended on repairs and improvements on the house. He estimates that the community spent $7,850 for materials and his labor to build a patio, a fence, remodel, paint, put on a new garage roof, and to keep the house in general repair. (These estimates were called into question on cross-examination.) · He argues that by keeping the house in repair he has improved the wife's separate estate because the value of a run-down house would not have increased to the extent that the kept-up house has. He has not, however, submitted any evidence to show that the value of the house was enhanced by these repairs and improvements. The measure of reimbursement is the increase in the value of the property due to the improvements, *Lawson v. Ridgeway,* supra, and the burden is on the claimant to show the amount of the increase. See *In re Marriage of Greer,* 483 S.W.2d 490 (Tex.Civ.App.1972). Because of rising real estate prices in this community, it is possible that the condition of the house has little or no connection with the present value of the wife's property.

■ Because of the equitable nature of the husband's claim, it is appropriate also to take into account the fact that the Testers lived in the wife's separate property rent-free for seven years. See *Brown v. Brown,* supra; *Hanrahan v. Sims,* supra. The trial court properly rejected the husband's claim for reimbursement.

The husband argues that the trial court erred in ordering him to pay the wife $75 a month for child support for the one child in her custody. He points out that his income is inadequate to meet his expenses and he has the custody of the other three children. At the time of trial, the husband was receiving about $900 a month in take-home pay. The wife was earning approximately $260 a month in a 14-week training program, with no certain prospect of employment on its completion.

■■ The trial court has broad discretion to determine the appropriate amount of child support. An appellate court will not disturb the trial court's decision if there is any reasonable evidence to support it. *Williams v. Williams,* 19 Ariz.App. 544, 509 P.2d 237 (1973). From the evidence, the trial court's decision that the husband is in a better position to bear the burden of child support is a reasonable one.

The husband's final contention is that the trial court erred in its method of dividing the community's interest in his employment annuity plan. At the trial he testified that he was currently contributing $50 a month to a retirement plan and that he had been contributing to the plan since July, 1973. In *Van Loan v. Van Loan,* 116 Ariz. 272, 569 P.2d 214 (1977), the Arizona Supreme Court held that the community has a divisible interest in a spouse's retirement benefits, to the extent that the benefits result from employment during the marriage, because both the employee's contributions and the benefits in excess of the contributions represent deferred compensation. Assuming the contributions were $50 a month for the 56 months between July, 1973 and the trial, the community contributed a total of $2,800. There was no evidence concerning the nature of the retirement plan or the parties' rights under it. The trial court awarded the wife $5,000 as her share of the retirement benefits, setting a lien on the real property awarded the husband to secure payment. The wife claims in her brief that the community has contributed to two retirement plans, for seven years to one and six years to the other, but she does not

refer us to any evidence in the record to support this claim.

■ Although it is the role of the trial court to sift the evidence and determine the facts, an appellate court must reverse the lower court's decision when it finds no evidence to support it. *Vivian Arnold Realty Co. v. McCormick,* 19 Ariz.App. 289, 506 P.2d 1074 (1973). In the absence of sound reasons appearing in the record which justify a contrary result, the apportionment of the community estate upon dissolution must be substantially equal. *Buttram v. Buttram,* 122 Ariz. 581, 596 P.2d 719 (1979). In its disposition of the other community assets, the trial court apparently sought substantial equality. We can find no evidence in the record on which it could have based its decision that the value of the wife's share of the retirement benefits is $5,000.

■ We do know, however, that there is some community interest in the retirement benefits and the only question is the value of these benefits. It is clear that this community interest must be valued as of the date of dissolution of the community. Such value should be the actuarial current value of the community interest of the benefits, cf. *Smith v. Lewis,* 13 Cal.3d 349, 118 Cal. Rptr. 621, 530 P.2d 589 (1975), or any other method which reflects the present value of the community interest in the benefits. Once this value is determined, if the community musters sufficient assets to do so, the preferable mode of division is to award the pension rights to the employee and property of equal value to the spouse. *Smith v. Lewis,* supra. Here, such an asset exists in the house which is to be sold and the proceeds divided when the youngest child reaches the age of 18.

That part of the judgment and decree which awards the wife the sum of $5,000 as her share of the retirement benefits is vacated. The rest of the decree and judgment is affirmed and the case is remanded to the trial court for a determination of the amount to be awarded the wife as her share of the retirement benefits.

RICHMOND, C. J., and HATHAWAY, J., concur.