NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

MICHAEL NICHOLAS DIVRIS, *Petitioner/Appellee*,

*v.*

SARAH CRIMSON MYATT, *Respondent/Appellant*.

No. 1 CA-CV 25-0222 FC

FILED 11-28-2025

Appeal from the Superior Court in Maricopa County
No.  FN2021-093118
The Honorable Quintin H. Cushner, Judge

**AFFIRMED**

COUNSEL

Jeffrey G. Pollitt PC, Phoenix
By Jeffrey G. Pollitt, Jennika N. McKusick
*Counsel for Petitioner/Appellee*

Genesis Legal Group, Gilbert
By Debora M. Levine
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Andrew M. Jacobs joined.

---

**C A T L E T T**, Judge:

¶1          Sarah Myatt ("Wife") appeals a decree ("Decree") dissolving her marriage to Michael Divris ("Husband"). Wife argues the court erred by not granting the marital community a lien on Husband's sole and separate business, which she claims increased in value during the marriage due to the community's efforts. Because the court did not abuse its discretion by finding Velox Air, Inc. ("Velox Air") was the successor to Velox Construction, Inc. ("Velox Construction"), and because Wife thus failed to show Velox Air increased in value during the marriage, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          Husband and Wife got married on December 31, 2019. Husband petitioned to dissolve the marriage on September 15, 2021, and Wife accepted service on September 24, 2021.

¶3          Before the marriage, Husband owned multiple businesses, including Velox Construction and Velox Air, which the parties agree remained Husband's separate property after the marriage.

¶4          At trial, Wife argued Velox Air increased in value during the marriage and the community should have a 100% lien on that increase. Wife opined that Velox Air's value as of the date of marriage was zero. Her position was that, though Husband formed Velox Air before marriage, it did not start operations until after. She testified Velox Air had no revenue before marriage but admitted being unfamiliar with Velox Air's pre-marriage bank account activity. When asked how she contributed to Velox Air's success, Wife stated she and Husband started operations servicing home warranties with a van from Velox Construction "because [Husband] was closing down Velox Construction[.]" Wife explained that Husband became more involved in Velox Air "[o]nce . . . Velox Construction was shutting down or was shut down[.]"

¶5          Wife's pretrial statement indicated that her valuation expert, Melissa Loughlin-Sines ("Ms. Sines"), concluded the community was

entitled to a 100% lien on Velox Air's increased value under *Rueschenberg v. Rueschenberg*, 219 Ariz. 249 (App. 2008). Ms. Sines' expert report opined that Velox Air's value as of September 15, 2021, was $810,000. Ms. Sines did not, however, establish Velox Air's value before December 31, 2019, the date of marriage. She did not give Velox Construction's value at any date. And she conceded she reached no conclusion whether Velox Air increased or decreased in value during the marriage, and she "did not do a *Rueschenberg* analysis."

¶6            Ms. Sines claimed Velox Construction was separate from Velox Air but admitted there was some crossover between them—Velox Air might have paid some of Velox Construction's expenses. She agreed she did not consider Velox Construction's revenue or expenses when valuing Velox Air.

¶7            Ms. Sines was concerned about the accuracy of Velox Air's records because of a negative accounts-receivable balance, several outgoing checks with no description, more round numbers than she "would expect to see in a business," and what appeared to be loan payments rather than expense payments. She testified that the expense records were "useless." Because she did not "rely on the expenses of the company," Ms. Sines used industry average profit margins from sources like Risk Management Associates ("RMA"). She claimed "business valuators use [this] data regularly for benchmarking their company to the industry as a whole," and she believed doing so was reasonable for arriving at Velox Air's value. Ms. Sines also used an "income approach" to calculate that value.

¶8            Husband testified he incorporated Velox Construction in California in 2014. He created Velox Air in May 2017 as an extension of Velox Construction. He explained that, because he moved to Arizona and paid taxes in both states, creating Velox Air—an Arizona corporation working in Arizona—would eliminate double taxes. He kept the name "Velox" for name recognition, project references, and goodwill in Arizona. He was president of both companies.

¶9            He challenged Wife's testimony that Velox Air did not start operations before marriage. He recounted that, before marriage, Velox Air owned a contractor's license and bond, and it had clients, contracts, and money in a bank account. For example, Husband explained that Velox Air entered a contract with American Home Shield in 2019, and Velox Construction had a prior "very, very similar" contract. Husband testified that, in early 2020, Velox Construction shut down and transferred its trucks, equipment, assets, and liabilities to Velox Air for no consideration.

**¶10** Husband's expert, Frank Pankow ("Mr. Pankow"), produced a report and testified that Velox Construction started in California, but after Husband moved to Arizona, Husband continued the same work under Velox Air. Mr. Pankow opined that "both companies are the same"—there was continuity of operations, unitary management, and the nature of operations between Velox Air and Velox Construction did not change significantly. Mr. Pankow had no concerns about Husband transferring assets and liabilities to Velox Air when phasing out Velox Construction.

**¶11** Mr. Pankow used a "net asset" method to value Velox Air as of the date of the marriage and September 30, 2021. He did so because he "did not find sufficient comparable companies to us[e] a market approach." He explained that, because Velox Air had a negative value as of September 2021, and had decreased in value during the marriage, there was no value to apportion to the community.

**¶12** Mr. Pankow also criticized Ms. Sines' valuation. He thought using RMA data to calculate Velox Air's value was "very inappropriate." He pointed out that Ms. Sines used Velox Air's reported revenue, "but then disregarded any of the reported expenses and used percentages that are reported in RMA[.]" He explained that RMA data captures financial information from only a small section of a given industry—in this case, 113 companies nationwide—and that RMA data may be irrelevant to any one subject company. He also pointed out that Ms. Sines mistakenly reported $400,000 in excess cash, which would not have happened had she considered Husband's data or reviewed Velox Air's bank statements. Mr. Pankow also pointed out that Ms. Sines' report did not address Velox Air's value when the parties got married. And he testified that, even if Ms. Sines' estimated value of $810,000 as of September 2021 was accurate, that was a decrease in value compared to his estimate that Velox Air was worth $898,000 at the time of marriage.

**¶13** The court found that Velox Air decreased in value during the marriage and therefore the community was not entitled to an additional allocation. Wife timely appealed. We have jurisdiction. *See* A.R.S. § 12-2101(A)(1); Ariz. R. Fam L.P. 78(c).

**DISCUSSION**

**¶14** Wife challenges the superior court's finding that Velox Air declined in value and therefore the community was entitled to no additional allocation. She asks us to reverse and order the superior court to consider only her expert's conclusion that Velox Air increased in value

during the marriage. She also asks that we order the superior court to award the community a 100% equitable lien on that increase.

**¶15** The existence and amount of a community's interest in separate property resulting in an equitable lien is a mixed question of fact and law. *Valento v. Valento*, 225 Ariz. 477, 481 ¶ 11 (App. 2010). We defer to the court's factual findings but review its legal conclusions de novo. *Helvetica Servicing, Inc. v. Pasquan*, 249 Ariz. 349, 352 ¶ 10 (2020). We view the evidence in the light most favorable to upholding the court's judgment. *Saba v. Khoury*, 253 Ariz. 587, 590 ¶ 7 (2022). "[W]e may affirm on any ground supported by the record." *Yauch v. S. Pac. Transp. Co.*, 198 Ariz. 394, 403 ¶ 25 (App. 2000).

**¶16** Separate property is "real and personal property that is owned by that spouse before marriage . . . and the increase . . . and profits of that property[.]" A.R.S. § 25-213(A). Community property is, with a few exceptions, "[a]ll property acquired by either husband or wife during the marriage[.]" A.R.S. § 25-211(A). If a separately owned business increases in value during marriage, that increase may remain separate or belong to the community, depending on why the value increases. *See Cockrill v. Cockrill*, 124 Ariz. 50, 52 (1979); *Rueschenberg*, 219 Ariz. at 252 ¶ 12.

**¶17** Under *Rueschenberg*, a court can apportion to the community an increase in the value of separate property when the community's labor caused it. 219 Ariz. at 254 ¶ 20. The non-owner spouse asserting a community interest in separate property must prove the asset increased in value. *Hefner v. Hefner*, 248 Ariz. 54, 60 ¶ 17 (App. 2019); *Tester v. Tester*, 123 Ariz. 41, 44 (App. 1979). If the non-owner spouse does so, then the other spouse must show that the increase in value did not result from community efforts. *Rueschenberg*, 219 Ariz. at 257 ¶ 34; *Cockrill*, 124 Ariz. at 52. If the court finds the separate asset did not increase in value, there is nothing to apportion to the community. *See Hefner*, 248 Ariz. at 60 ¶¶ 16–17.

**¶18** Wife and Husband agree Velox Air and Velox Construction are Husband's separate property. Wife concedes she had to show Velox Air increased in value during the marriage. She argues she presented "substantial evidence that Velox Air had no value as of the date of marriage" and it "was worth either $810,000 (fair value) or $729,000 (fair market value)" on the date of dissolution.

**¶19** We disagree Wife met her burden. The court received evidence that Velox Air had value before the marriage. Velox Air had a contractor's license and bond, a bank account with tens of thousands of

dollars in activity, and a contract with American Home Shield to service home warranties. Husband also brought intangible assets like existing clientele and goodwill—developed before marriage—to Velox Air.

¶20 Wife argues the court should have ignored Velox Construction's liabilities because it never formally merged with Velox Air. But Wife identified no caselaw requiring a formal merger between two companies before a court may find a predecessor-successor relationship. To the contrary, opinions discussing successor companies in the context of marital dissolutions have required no such formality.

¶21 In *Hefner*, this court affirmed the superior court's finding that a company created during the marriage was still separate property because it was "created to facilitate the transfer of the business assets" from a company the husband's father owned. 248 Ariz. at 59–60 ¶ 14. The court focused on the intent behind the transfer; the lack of formal merger documents between the two companies played no role in the analysis. *See id.* at 59 ¶¶ 14–15.

¶22 Conversely, in *Gerow v. Covill*, the court upheld a finding that the community had a 100% lien on the husband's share of a company—despite it being created three months *after* the community terminated. 192 Ariz. 9, 11, 16 ¶¶ 1–3, 27 (App. 1998). There, the superior court found that husband fraudulently conveyed his consulting business to a new company to try to exempt it from the marital community. *Id.* at 12 ¶¶ 1, 10. The husband had done so by transferring the assets of the old company to a new one. *Id.* at 15 ¶ 25. Because those assets—and the clients the husband gave to the new company—were developed during the marriage, they were community property. *Id.* at 15–16 ¶¶ 27, 29. Again, this court affirmed the superior court's finding that a successor relationship existed between the old and new companies, and we did so without requiring formal merger documents.

¶23 Whether the superior court correctly found that Velox Air absorbed Velox Construction's assets and liabilities turns on whether a predecessor-successor relationship existed between them. The existence of a merger between two companies—while maybe sufficient—is not necessary to show a predecessor-successor relationship. *See A.R. Teeters & Assocs., Inc. v. Eastman Kodak Co.*, 172 Ariz. 324, 329 (App. 1992) (citation omitted). Instead, a predecessor-successor relationship may also exist when a new company is a "mere continuation" of the old. *See id.* Two factors determine whether one company is a "mere continuation" of another: (1) "a substantial similarity in the ownership and control of the two

corporations (e.g., identical directors . . . goods and services, and location)" exists and (2) "insufficient consideration run[s] from the new company to the old." *Id.* at 330 (citation omitted). Here, reasonable evidence supports that Velox Air was the successor to Velox Construction.

**¶24** Velox Air and Velox Construction were substantially similar. Husband was the sole owner and president of both companies, and both did nearly identical work. Husband testified that Velox Air was an extension of Velox Construction, created to avoid double taxation after he relocated to Arizona. Wife testified Velox Air commenced operations by servicing home warranty contracts. Velox Air entered a warranty contract in October 2019—prior to the marriage—and Velox Construction had a prior, nearly identical contract with the same client. The evidence supports that Husband transferred his expertise, contacts, knowledge, clients, and assets from Velox Construction to Velox Air.

**¶25** The other factor—insufficient consideration—also supports a predecessor-successor relationship. As Wife testified, when Velox Air started, it used a van from Velox Construction. And Husband testified Velox Air did not pay anything for the assets it received from Velox Construction. Husband testified he used the name "Velox" for the successor company because it would garner goodwill, project references, and name recognition from Velox Construction. But there is no evidence that Velox Air paid Velox Construction for any intangible assets.

**¶26** The court found that "[w]hile the entities did not legally merge, credible evidence was presented that Velox Construction, Inc. had assets and liabilities transitioned to Velox Air, Inc." Reasonable evidence supports that finding. So the court did not err by finding a predecessor-successor relationship between Velox Construction and Velox Air. And it did not abuse its discretion in finding (at least implicitly) that Velox Construction's assets and liabilities affected Velox Air's value on the date of marriage.

**¶27** As explained, Wife had to show Velox Air increased in value during the marriage. But neither Wife nor her expert considered the assets and liabilities transferred to it from Velox Construction. Wife testified Velox Air had no value at the time of marriage. But even assuming Wife had personal knowledge about Velox Air's value at that time (she was not an owner), her testimony did not consider Velox Air's value as the successor to Velox Construction. Because Wife presented no evidence of Velox Air's value as a successor to Velox Construction on the date of marriage, she did not establish that Velox Air increased in value during the

marriage. Put differently, without establishing a realistic starting value for Velox Air, Wife could not show that starting value later increased. We therefore affirm the Decree.

¶28    Wife makes other arguments. She argues the court erred by: (1) admitting an exhibit she claims was not a business record under Arizona Rule of Evidence 803(6)(B); (2) "considering the data relied upon" by Husband's expert "without any other substantial evidence showing it was accurate"; (3) placing the burden of proof under *Rueschenberg* on her rather than Husband; (4) accepting Husband's accounting of Velox Air; and (5) not enforcing a purported stipulation between the parties to rely on Wife's expert's valuation of Velox Air.

¶29    We need not address these arguments because they do not undercut the court's key finding that Velox Air was the successor to Velox Construction and took on its assets and debts. Wife did not account for those assets and debts in assessing Velox Air's value on the date of marriage, and Wife's expert did not in any manner value Velox Air on that date. So Wife failed to satisfy her initial burden of showing that Velox Air increased in value during marriage. *See Hefner*, 248 Ariz. at 60 ¶ 17. And without Wife doing so, Husband had no burden to satisfy. *See Rueschenberg*, 219 Ariz. at 257 ¶ 34

## ATTORNEY FEES

¶30    Husband requests attorney fees under A.R.S. § 25-324. In our discretion, we deny that request. But we award Husband costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶31    We affirm the Decree.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR

8