196 P.3d 852

**Jubie RUESCHENBERG, Petitioner/Appellee,**

v.

**Scott RUESCHENBERG, Respondent/Appellant.**

**No. 1 CA–CV 07–0300.**

Court of Appeals of Arizona, Division 1, Department B.

May 13, 2008.

Review Denied Oct. 28, 2008.

Warner Angle Hallam Jackson Formanek, PLC By Charles R. Hallam, and Tracey Van Wickler, Phoenix, Attorneys for Petitioner/Appellee.

Law Office of Scott E. Boehm, PC By Scott E. Boehm, Jeffrey G. Pollitt, PC By Jeffrey G. Pollitt Phoenix, Co–Counsel for Respondent/Appellant.

## OPINION

BARKER, P.J.

¶ 1 Scott Rueschenberg ("Husband") appeals from the trial court's award of $296,667 to Jubie Rueschenberg ("Wife") as one-half of the community's share in the value of Husband's separate property. For the reasons that follow, we agree with the trial court and affirm.

### *Facts and Procedural History*

¶ 2 Wife and Husband were married May 15, 1998. Prior to and at the time of marriage, Husband owned a business called Desert Mountain Medical ("DMM"). DMM sells medical hardware, for the repair of human joints, to surgeons and hospitals. It is undisputed that DMM is Husband's separate property.

¶ 3 The parties resolved all issues regarding the dissolution of marriage through mediation except for the issue of any community

interest in the increase in value of DMM over the life of the marriage. On December 14, 2005, the trial court appointed a special master at the request of the parties.[1] On December 22, 2006, the special master filed a report with the trial court.

¶4 The special master's report used the capitalization of earnings method of valuation[2] to find that DMM had a fair value of $163,166 at the commencement of the marriage. This value was based on the special master's finding that normalized earnings[3] were $38,000 at the time the parties married, that the applicable capitalization rate was 25%, and that there was an additional $11,166 in a non-operating asset/shareholder loan which added to the value. Using the same method, it found that DMM was worth $1,440,000 (having normalized earnings of $360,000) on October 31, 2003.[4] The report then awarded Husband a sole and separate property interest of $550,000. It arrived at this figure by giving what it considered to be a fair rate of return on the original investment of $163,166. The report then subtracted that $550,000 from the value at the dissolution of marriage, $1,440,000, and found that the community was responsible for two-thirds of the resulting increase (i.e. two-thirds of $890,000), which amounts to $593,333. It then awarded Wife half of this amount, or $296,667.

¶5 The report found that the community's labor was only responsible for two-thirds of the increase in the value of the company because external factors were responsible for one-third of the increase. Husband had presented evidence that the company's increase in value was due to an increase in manufacturer marketing and sales assistance, increased customer acceptance of the products, increased research and development by man-ufacturers, natural population growth in the market area, and other DMM sales personnel expanding the market.

¶6 The special master's report also found that the community had received virtually 100% of the net distributable earnings during the marriage, but did not include a finding as to what that amount was. Wife's expert believed the *total* amount of monies distributed to the community during marriage to be $2,875,000 while Husband's expert believed it to be $3,122,521. There was no request, however, by Husband to determine the amount of *net* distributable earnings (generally, income less salary and other expenses) generated by DMM during the marriage. Consequently, the report did not consider whether there was an amount of net distributable earnings that had been overpaid to the community and was due Husband as the owner of DMM or should be subtracted as an offset from the community's interest in the value of DMM.

¶7 The trial court incorporated the special master's findings verbatim into its decree of dissolution. Husband filed a timely notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") § 12–2101(B) (2003).

### Discussion

¶8 Husband makes several arguments on appeal: 1) that the court erred in giving the community an interest in DMM's increased value (here, goodwill) when the community had already received the company's profits (net distributable earnings) generated during the course of the marriage, 2) that the trial court erred in awarding the community a further interest in DMM when a fair salary had already been paid to the community, 3)

1.  The parties actually requested an arbitrator, and the trial court order read "Order Appointing Arbitrator." The court appears to have intended to appoint a special master, and subsequently referred to him as a special master.

2.  One source defines capitalization of earnings as the "[v]aluation of a going concern business on the basis that the operations will continue to yield constant and regular earnings. These earnings (called 'normalized earnings') are multiplied by a capitalization rate (normally the reciprocal of the desired rate of return) to arrive at the value of the business." Business Dictionary, http://www.businessdictionary.com/definition/capitalization-of-earnings-method.html (last visited April 16, 2008).

3.  See n. 2, *supra*, for a definition of "normalized earnings."

4.  The parties stipulated to use October 31, 2003 as the valuation date for DMM for divorce purposes.

that the trial court abused its discretion in finding that two-thirds of DMM's growth was due to community labor and efforts, and 4) that the trial court abused its discretion in apportioning the increase in value when the community had already received more than its pro rata share of the total increase in net profits and value.

### 1. Both Profits and Increase in Value Must Be Considered in Order to Effect an Equitable Apportionment.

¶ 9 Husband argues that Arizona law prohibits the apportionment of both profits and increased value between community and separate property. Specifically, Husband argues that Arizona statutes define all of the increased value of a separate property business as separate property and that Arizona courts have carved out a limited qualification to the statutory scheme that may grant the community some interest in either profits or increase in value but not both. Husband misunderstands the Arizona community property scheme and mischaracterizes the Arizona case law addressing the issue.

¶ 10 Arizona's statutory community property scheme provides that the "increase, rents, issues and profits" of a spouse's real and personal property "that is owned by that spouse before marriage" is "the separate property of that spouse." A.R.S. § 25–213(A) (2007). It also provides, however, that "all property acquired by either husband or wife during the marriage is the community property of the husband and wife except for property that is ... [a]cquired by gift, devise or descent." A.R.S. § 25–211 (2007).

¶ 11 These provisions potentially conflict when a separate property business earns profits and/or increases in value because of community labor. For instance, § 25–213(A) provides that the "increase ... and profits" of separate property continue to be "the separate property of that spouse." On the other hand, § 25–211 provides that "[a]ll property acquired" during the marriage by husband or wife, with exceptions not applicable here, "is the community property of the husband and wife." Thus, as to "profits" and "increases" from a separate business that are the product of community labor, the competing statutes can render potentially different results.

¶ 12 When it appears that two statutes conflict, "whenever possible, we adopt a construction that reconciles one with the other, giving force and meaning to all statutes involved." *UNUM Life Ins. Co. of America v. Craig*, 200 Ariz. 327, 333, ¶ 28, 26 P.3d 510, 516 (2001) (citing *Lewis v. Ariz. Dep't of Econ. Sec.*, 186 Ariz. 610, 614, 925 P.2d 751, 755 (App.1996)). Arizona courts have long agreed that the results of a spouse's labor are community property. *Koelsch v. Koelsch*, 148 Ariz. 176, 181, 713 P.2d 1234, 1239 (1986) ("[I]t is established law that ... the fruits of labor expended during marriage are community property ....") (citing *Shaw v. Greer*, 67 Ariz. 223, 225, 194 P.2d 430, 431 (1948)). In resolving the specific issue regarding separate property profits and increase in value, Arizona courts have looked to the nature, or source, of the profit from or increase of the separate property business. *Cockrill v. Cockrill*, 124 Ariz. 50, 53, 601 P.2d 1334, 1337 (1979); *Rundle v. Winters*, 38 Ariz. 239, 245, 298 P. 929, 931 (1931). The rule is that if the profits and/or increase result from the "inherent qualities of the business," the profits and increase are separate property; if the profits and/or increase result from the "individual toil and application of the spouse," they are community property. *Rundle*, 38 Ariz. at 245, 298 P. at 931.

¶ 13 As a further refinement to this rule, prior to the *Cockrill* decision in 1979, Arizona followed what is known as the "all or none" rule. That rule provided that either *all* of the profits and *all* of the increase were separate property or *all* of the profits and *all* of the increase were community property depending on whether the profits and increase were *"primarily due* to the toil of the community or primarily the result of the inherent nature of the separate property." *Cockrill*, 124 Ariz. at 53, 601 P.2d at 1337 (citing *Porter v. Porter*, 67 Ariz. 273, 195 P.2d 132 (1948)) (emphasis added); *Anderson v. Anderson*, 65 Ariz. 184, 187, 177 P.2d 227, 229 (1947) (stating that because "the inherent nature of the [separate] business is" such that "the success is due to the management

and requires the attention of the owner," all the profits of that business were "community property"); *In re Torrey's Estate*, 54 Ariz. 369, 375–76, 95 P.2d 990, 993 (1939) ("[I]f profits come mainly from the property, ... they belong to the owner of the property," but if "profits come mainly from the efforts or skill of one or both [spouses], they belong to the community."); *Spector v. Spector*, 23 Ariz.App. 131, 140–41, 531 P.2d 176, 185–86 (1975) (holding that all of the profits from a separate business were separate property even though the "increase in value" was *almost* all due to the "increases in the value of Arizona real estate during the period" and making no effort to apportion between separate and community property) (emphasis added).

¶ 14 *Cockrill* did away with the all or none rule and instead instituted an apportionment rule that apportions to the community and to the separate property the profits or increase in separate property attributable to each. 124 Ariz. at 54, 601 P.2d at 1338. The court explained that the purpose of apportioning the profits or increase was to achieve "substantial justice between the parties." *Id.* To do otherwise would "either deprive the [separate] property owner of a reasonable return on the investment or [would] deprive the community of just compensation for its labor." *Id.*

¶ 15 Husband points to many of the pre-*Cockrill* cases, arguing that some discuss the granting of a community interest in the "profits" of a separate business,[5] while others discuss the granting of a community interest in the "increase in value,"[6] but none grant both. He then argues that *Cockrill* intended to allow the apportionment of either profits or increase in value, but not both. Husband points to the phrase "profits, or increased value" employed by the *Cockrill* court, *id.*, and argues that the court declined to give the community an interest in both profits and

increase in value, but rather just one of them. He argues that *Cockrill* tried to balance the underlying tension between § 25–213(A) (attributing increase in separate property to the separate property) and § 25–211 (providing that all property acquired during marriage is community property). In view of that balance, he argues, *Cockrill* permits an award to the community only for profits (net distributable earnings) *or* increase in value (here, goodwill), but not both. We reject this interpretation of *Cockrill.*

¶ 16 *Cockrill* states in pertinent part:

This Court has also become disenchanted with the all or none rule. To implement the all or none rule and determine the [p]rimary source of the profits, the portion of the profits that resulted from each source must be calculated.

Once this has been done, it is only logical to apportion the *profits, or increased value,* accordingly. To do otherwise will either deprive the property owner of a reasonable return on the investment or will deprive the community of just compensation for its labor.

We, therefore, also depart from the all or none rule and hold that *profits,* which result from a combination of separate and community labor, *must be apportioned accordingly.*

*Id.* (emphasis added). It is true that the language of the holding in the last sentence quoted above refers only to apportioning "profits." For a number of reasons, however, we do not view *Cockrill* as holding that *either* profits or increase in value may be apportioned but not both.

¶ 17 First, *Cockrill* does not distinguish between profits and increased value; to the contrary, it appears to use the terms interchangeably. The court first says that the "portion of *the profits* that resulted from each source must be calculated" and then

---

5. Husband argues that the cases which grant only profits include *Rundle v. Winters,* 38 Ariz. 239, 298 P. 929 (1931); *Lincoln Fire Insurance Co. v. Barnes,* 53 Ariz. 264, 88 P.2d 533 (1939); *In re Torrey's Estate,* 54 Ariz. 369, 95 P.2d 990 (1939); *Anderson v. Anderson,* 65 Ariz. 184, 177 P.2d 227 (1947); and *Lawson v. Ridgeway,* 72 Ariz. 253, 233 P.2d 459 (1951).

6. Husband argues that the cases which grant only the increase in value include *Nace v. Nace,* 104 Ariz. 20, 448 P.2d 76 (1968); *Everson v. Everson,* 24 Ariz.App. 239, 537 P.2d 624 (1975); *Nelson v. Nelson,* 114 Ariz. 369, 560 P.2d 1276 (App.1977); *Percy v. Percy,* 115 Ariz. 230, 564 P.2d 919 (App.1977); and *Baum v. Baum,* 120 Ariz. 140, 584 P.2d 604 (App.1978).

immediately follows that with "it is only logical to apportion the *profits, or increased value,* accordingly." *Id.* (emphasis added). By setting "increased value" off with commas, the court implies that "increased value" is a phrase that restates or modifies "profits." The Chicago Manual of Style ¶ 5.49 (14th ed. 1993) ("Unless it is restrictive ..., a word, phrase, or clause that is in apposition to a noun is usually set off by commas...."). "Apposition" is defined as "a grammatical construction in which a noun or pronoun is followed by another that explains it." The Merriam–Webster Dictionary 50 (3d ed.1974). This interpretation is strengthened by the fact that the preceding sentence did not even mention increased value.

¶ 18 Second, language in cases prior to *Cockrill* also reinforces the idea that both profits and increase can be apportioned. For instance, this court stated in *Nelson v. Nelson,* 114 Ariz. 369, 560 P.2d 1276 (App.1977), that "an increase in value of separate property is subject to the same test as profits from separate property." 114 Ariz. at 372, 560 P.2d at 1279 (citing *Everson v. Everson,* 24 Ariz.App. 239, 537 P.2d 624 (1975)).

¶ 19 Third, and most importantly, it would be inconsistent with the supreme court's mandate in *Cockrill* to achieve substantial justice for this court to hold that the community has an interest in either the profits (net earnings) or the increased value (treated in this case as goodwill) but not both. For instance, in a situation where the community labor was responsible both for the net earnings generated by a separate business and for the increase in goodwill of that separate business, allowing the community only an interest in one or the other would not achieve substantial justice. It would shortchange the community of either its fair share of the net earnings or its fair share of the goodwill. In addressing the "approaches to the problem of apportionment," *Cockrill* endorsed the proposition that "our courts have developed no precise criterion or fixed standard, but have endeavored to adopt a yardstick which is most appropriate and equitable in a particular situation." 124 Ariz. at 54, 601 P.2d at 1338. The entire purpose of rejecting the all or none rule and implementing apportion-

ment was to achieve a more equitable result. It would seem odd indeed if we were to construe *Cockrill* to require the exclusion from the apportionment process of an entire category of assets—either net earnings or goodwill—when both the separate property itself and the labor of the community were jointly responsible for increasing them. Each category of property, separate and community, should receive its fair and equitable share.

¶ 20 Therefore, we hold that when apportioning the increase in value and/or profits from a separately held business, it is not error to apportion both profits (net earnings) and increase in value (whether that is goodwill or a measurable increase in value of some other asset) if the community labor was responsible for a portion of both and if such an apportionment "will achieve substantial justice between the parties." *Id.* Rather, as we describe more fully below, we hold that the trial court must equitably apportion the combined total of the profits (net distributable earnings) and increase in value (whether goodwill or otherwise) of the separate business if the efforts of the community caused a portion of that increase and substantial justice requires it.

### 2. A Finding of Reasonable Compensation Does Not Necessarily Preclude an Award Based on Increased Value and/or Profits.

¶ 21 Husband next argues that when the community has received a fair salary for the community's labor contributed to the separately held business, the *Cockrill* inquiry ends and no further apportionment is permitted. We disagree.

¶ 22 Husband's argument is based upon the rule set forth in *Nace v. Nace,* 6 Ariz. App. 348, 354, 432 P.2d 896, 902 (1967), *vacated on other grounds* in 104 Ariz. 20, 448 P.2d 76 (1968), and subsequent cases. In *Nace,* the husband had a separate property interest in the ownership of a chain of movie theaters. 6 Ariz.App. at 349, 432 P.2d at 897. The separate property increased in value during the marriage. *Id.* at 349–50, 432 P.2d at 897–98. The husband actively managed the business during the marriage. *Id.* The trial

court determined that the separate property had increased in value both due to the inherent nature of the property and the husband's management skills. *Id.* The trial court awarded the husband the "lion's share" of the increase in the separate property business because it was due to the husband's efforts, as contrasted with the wife's, after the marriage. *Id.* at 354, 432 P.2d at 902. The court of appeals rejected this reasoning because the efforts of the husband on behalf of the community were efforts in which the wife was entitled to share. *Id.*

¶ 23 In describing the "all or none" rule in place in Arizona, the *Nace* court stated that "[i]n the absence of a clear showing that a fair salary for the husband's efforts has been set, Arizona decisions have followed an 'all or none' rule. . . ." *Id.* The court reversed the allocation of value as to the separate property and awarded the wife substantially more. *Id.* at 355, 432 P.2d at 903.

¶ 24 In *Cockrill,* the Arizona Supreme Court noted the rule from *Nace.* 124 Ariz. at 53, 601 P.2d at 1337. It stated that "[t]his language seems to imply that if the community were paid a fair salary for its labor, the increase or profits from the separate property would remain separate. Only if such a salary had not been paid, or was not reasonable, would the all or none rule be applied." *Id.* The *Cockrill* court went on to describe this provision as an exception to the all or none rule and "[in] effect, apportionment of the increased value is allowed so long as the parties have segregated the profits themselves by paying the community a salary." *Id. Cockrill,* as explained above, then rejected the all or none rule in favor of an apportionment rule, stating that "profits [and/or increase], which result from a combination of separate property and community labor, *must be apportioned accordingly.*" *Id.* at 54, 601 P.2d at 1338 (emphasis added).

¶ 25 Our supreme court then gave several methods of possible apportionment. *Id.* The first requires the court to "determine the reasonable value of the community's services and allocate that amount to the community, and treat the balance as separate property attributable to the inherent nature of the separate property." *Id.* The second is to "allocate to the separate property a reasonable rate of return on the original capital investment. Any increase above this amount is community property." *Id.* The court went on to make explicitly clear that "different circumstances[ ] requir[e] the application of a different method of apportionment. We, therefore, hold that the trial court *is not bound* by any one method, but may select whichever will achieve substantial justice between the parties." *Id.* (emphasis added).

¶ 26 *Cockrill* thus rejected any requirement that the trial court follow one method of apportionment over another. The clear direction from *Cockrill* is that the method of apportionment applied must "achieve substantial justice between the parties." *Id.* We reject the argument that by *describing* how the *Nace* exception applied in the then-existing law, Cockrill was *endorsing* that exception in future cases. It is not difficult to envision a scenario in which a reasonable salary has been paid, but the community nevertheless has not been fairly compensated for the increase in value (whether reflected by goodwill or net profits) attributable to its effort. We agree with the reasoning and illustration of the trial court in this case in rejecting the continued applicability of *Nace* in light of *Cockrill:*

> [Applying the rule from *Nace* ] would be particularly egregious in a situation where an entity had substantial growth and less than one hundred percent (100%) of the [earnings attributable to the community] was distributed. If the testimony deduced that fair compensation was paid (for example based upon comparable industry standards), the sole and separate estate would be awarded all of the intangible growth *and* the undistributed portion of the earnings and compensation. This is far from the result that *Cockrill* envisions.

Indeed [one of the current parties' accountant's] Schedule 3 expands upon this point. In the case at bar, if DMM had hypothetically only distributed the $1,063,322 of his defined reasonable compensation, so that $2,059,199 remained within the entity, under Husband's analysis, reasonable compensation would have been paid, and no further division would

occur. Husband would thusly be able to retain not only the $2,059,199 of undistributed earnings, he would be entitled to retain the $1,510,000 of intangible value that [the accountant] found.

¶ 27 The foregoing illustration makes clear that if reasonable compensation for services rendered ended the analysis, the party owning the separate property could retain all the value (profits and goodwill) built by the community labor simply by paying himself or herself a salary that was comparable to industry standards, and accordingly "fair." In that situation, a patently unjust result would arise from the trial court's inability to consider another method of apportionment. The community, though having been fairly compensated for its labor, would not receive any allocation for the increase in value (whether net profits or goodwill) which was directly tied to the community's effort. Thus to the extent that the method applied prior to *Cockrill* and described in *Nace* limits the trial court's discretion to choose whichever method of apportionment will achieve substantial justice between the parties, we follow our supreme court's decision in *Cockrill*, not this court's prior ruling in *Nace*.

¶ 28 Husband also points us to *Roden v. Roden*, in which this court (after *Cockrill*) stated that "if the community is paid a fair return for its labor, the increase or profits from the separate property remain separate. Only if such return has not been paid, or was not reasonable, would the community have a claim to the growth in value of [the] separate property." 190 Ariz. 407, 411, 949 P.2d 67, 71 (App.1997) (citing *Nace*, 104 Ariz. at 20, 448 P.2d at 76). Husband argues that *Roden* reaffirms *Nace* and supports his argument that the trial court need not engage in an overall apportionment of the total increase in value of separate property due to the community's efforts if a reasonable salary has been paid the community. We disagree with Husband's arguments.

¶ 29 We appreciate that, on its face, the quoted language in *Roden* does support the proposition from *Nace* that no apportionment of the community's interest in profits and/or value is required so long as a reasonable salary has been paid to the community.

However, this principle was not relied upon in *Roden*. The wife in that case argued that she was entitled to her share of a community interest in the increase in value of a separate business. 190 Ariz. at 410, 949 P.2d at 70. Rather than finding that the community had been paid a reasonable salary, and therefore was not entitled under *Nace* to a community interest in the increase in value of the business, the trial court determined that "the increase in value of [the separate business], which resulted from community efforts, was *offset* by the amount of compensation—community property—that each party received during the marriage." *Id.* at 411, 949 P.2d at 71 (emphasis added). This court concluded that the trial court did not abuse its discretion in coming to that conclusion. *Id.* Although this court set forth that *Nace* could preclude the ability to receive an increase in value (if the community is reasonably compensated), neither the trial court nor this court relied on that rule. *Id.* at 410, 949 P.2d at 70. Rather, both the trial court and this court applied the underlying holding from *Cockrill*; namely, that apportionment must be "appropriate and equitable in a particular situation" and "achieve substantial justice between the parties." *Cockrill*, 124 Ariz. at 54, 601 P.2d at 1338. This took place as the trial court applied, and this court affirmed, an "offset" of the community's share in the increase in value of the separate property in light of the amount of compensation previously paid the community. *Roden*, 190 Ariz. at 411, 949 P.2d at 71.

¶ 30 It is instructive to consider, particularly in light of *Roden* and *Nace*, that a different analysis would apply in a typical business setting than one involving both separate and community property. For example, in a typical business, A (the business owner) hires B (the employee) to work for A's company. A is the sole owner of the company. A agrees to pay B a reasonable salary. Assume that over the course of five years A's business increases substantially in value and that 50% of the increase in value can be attributed to B's efforts. The law does not entitle B to 50% of any increase in value or profits because his contractual arrangement was only for the fair salary, which

had been paid and received. To grant B a share of the profits and/or of the company's increased value would essentially make B an equity partner with A. This, however, was not the contractual arrangement.

¶ 31 Now, if we change the facts to reflect a community property scenario, the result is different. Assume that all facts in the hypothetical are the same except that the business is A's separate property and when A hires B, they are married to each other and remain married during the relevant time period. The reason for the different result is the community nature of the property that results from the labor of B. In short, B's labor on behalf of the community makes the community a form of equity partner (to the extent of the community's toil) in A's sole and separate business. The Arizona Supreme Court put it this way:

> Where either spouse is engaged in a business whose capital is the separate property of such spouse, the profits of the business are either community or separate in accordance with whether they are the result of the individual toil and application of the spouse, or the inherent qualities of the business itself.

*Rundle,* 38 Ariz. at 245, 298 P. at 931. Thus, the company's profits, and as set forth above we construe that to also include its increase in value, become a community asset to the extent "they are the result of the individual toil and application of the spouse." *Id.* In essence, our community property laws transform the community into an equity partner with the sole and separate property-owning spouse to the extent the community's efforts have generated net earnings, increased the value, or otherwise increased the net worth and/or market value of the company. Under our hypothetical, the community is apportioned 50% of the total increase (however denominated) of A's company, as that is the amount attributable to B's efforts. The community's share is not eliminated just because the laboring spouse has been paid a fair salary along the way.[7]

¶ 32 Thus, to the extent the language from *Roden* suggests receipt of a fair salary deprives the community of an interest in value and/or profits in a separate business, otherwise due the community, it is contrary to *Cockrill* and we decline to follow it.

### 3. The Facts Support the Finding that Two–Thirds of DMM's Growth Was Attributable to the Community's Labor.

¶ 33 Husband argues that the trial court abused its discretion in finding that the community was responsible for two-thirds of DMM's growth. He argues that no evidence was presented that anything other than external factors contributed to DMM's growth after 1999.

¶ 34 Husband misperceives the burden of proof. It was not the responsibility of Wife to present evidence that DMM's growth was due to the community labor; rather, it was Husband's burden to show that it remained separate property. *Cockrill,* 124 Ariz. at 52, 601 P.2d at 1336 ("[W]hen the value of separate property is increased the burden is upon the spouse who contends that the increase is also separate property to prove that the increase is the result of the inherent value of the property itself and is not the product of the work effort of the community."). There is a strong presumption that "all earnings during coverture are community in nature" that is overcome only by a showing of clear and convincing evidence to the contrary. *Barr v. Petzhold,* 77 Ariz. 399, 409, 273 P.2d 161, 167 (1954).

¶ 35 Here, it was within the trial court's discretion to start with the presumption that all of the growth in DMM was community property and then look to the evidence presented by Husband to see if he had managed to overcome that presumption. Husband did present evidence that DMM's growth was influenced by external factors, including an increase in manufacturer marketing and sales assistance, increased customer acceptance of the products, increased

---

7. In the event A did more than simply own the separate property, a court tasked with determining the community's fair share would also have to determine the company's increase and profits attributable to A's toil during the marriage. Our hypothetical assumes that only B provided effort or contributed to the company's profits and/or increase in value.

258

research and development by manufacturers, natural population growth in market area, and other DMM sales personnel expanding the market. However, Wife testified that she served as the manager of operations of DMM from 1999 until the couple separated. Wife's expert testified that the primary factor responsible for DMM's growth was the "work effort of the community." Because there was reasonable evidence supporting the trial court's finding that two-thirds of the growth in DMM was primarily due to community labor, there was no error.[8]

### 4. There was No Abuse of Discretion in Failing to Apply the Two–Thirds/One–Third Ratio to the Total Increase of DMM During the Marriage.

¶ 36 Husband argues that the trial court abused its discretion in apportioning the increased value of the company given the prior distribution of net distributable earnings to the community. Specifically, Husband argues that the trial court "exceeded the bounds of reason by ignoring the fact that the community had received 100% of [DMM's] (very considerable) net distributable earnings, and by ruling that the community was also entitled to" a share of DMM's increase in value. *Reply Brief* at 25. We agree with the general principle encapsulated in Husband's argument but disagree that there has been an abuse of discretion on the facts here.

¶ 37 The trial court found (and neither party contests) that the marital community received virtually 100% of net distributable earnings during the marriage. If, as a result of its receipt of the funds, the community already had received more than its proportionate share of the total profits and increase in DMM, and the trial court used the reasonable rate of return method to award the

community additional monies, that may violate the fundamental rule from *Cockrill* to apportion the increase equitably. However, no request was made of the trial court to determine the amount of the net distributable earnings paid to the community. Neither was there a request to determine that the same two-thirds/one-third ratio as to value (goodwill) applied to net earnings.

¶ 38 In *Rowe v. Rowe* this court also dealt with the issue of apportioning an increase in both profits and value for a separately owned business. 154 Ariz. 616, 618–21, 744 P.2d 717, 719–22 (App.1987). The trial court concluded that a "fair ratio" to quantify "the overlapping contributions" between community contribution and that attributable to the separate property itself was a three-fourths/one-fourth ratio. *Id.* at 620, 744 P.2d at 721. In that case we approved the entire amount of the corporate stock in the sole and separate property to be awarded to the sole and separate property owner. *Id.* at 619, 744 P.2d at 720. This resulted in no further award to the community with regard to the sole and separate property. *Id.* at 620, 744 P.2d at 721. The reason we found no error in this ruling was "[b]ecause the community had received, through distribution and pension and profit-plan contributions, more than 75% of the sum of net distributable earnings and (assumed) goodwill." *Id.* Accordingly, there was no error in the trial court's conclusion that "the community had been fairly compensated for all of its contributions to the growth of [a separate business]." *Id.* Here, the principle from *Rowe* teaches that if the two-thirds/one-third ratio allocating growth in DMM applies to both profits (net earnings) and value (here, goodwill) then it could be an abuse of discretion for either the community or the separate property to receive more than its proportionate share of the combined total.[9]

---

8. Wife also argues that Husband cannot object to the adequacy of the trial court's factual findings because he failed to object below. As set forth above, we construe the primary focus of Husband's argument to be as he argued in his Opening Brief, that "[t]he Special Master simply had no basis *in the evidence* upon which to make its ruling." *Opening Brief* at 30 (emphasis in original). We have rejected this argument. Additionally, the trial court's order incorporating the special master's report states that "each party

shall have the right of direct appeal to the Arizona Court of Appeals ... from the decision of the Superior Court Judge (adopting, modifying or rejecting the arbitrator's decision)." Thus, any waiver issue as to the adequacy of the form of the findings is moot.

9. A hypothetical example may add clarity. Assume that a ratio of two-thirds/one-third was determined to apply to the share due the community and separate property, respectively, for its

¶ 39 Husband did not make this argument below, and it is questionable whether the argument is set forth in his appellate briefs.[10] Giving Husband the benefit of the doubt, we address the argument but we reject it on the facts before us.

¶ 40 To prevail on this argument, Husband would be required to show at a minimum [11] that the community received more than its pro rata share of the combined total of net distributable earnings and increase in goodwill. Equally, and conversely, he would have to show that he received less than his pro rata share of the earnings as separate property. As pointed out above, the trial court was never asked to determine, and did not determine, the amount of net distributable earnings (income less salary and other expenses) generated during marriage. Because of this, we are unable to determine the combined total of net distributable earnings and increase in value. Thus, there is no factual basis on which to assert error as there is no total figure to which the two-thirds/one-third ratio can be applied to determine—as the court did in *Rowe*—whether the community had already received its proportionate share of the total and no further monies were owed. Thus, there is no error on these grounds.[12]

*Conclusion*

¶ 41 For the foregoing reasons, we affirm.

CONCURRING: PATRICK IRVINE and DIANE M. JOHNSEN, Judges.

---

contribution to the growth of the business. Assume the amount of net earnings was $80 and increase in value was $20. The combined total of the increase is $100. The community would be entitled to $66.67, and the sole and separate property would be entitled to $33.33. If the community had already received $80 from net distributable earnings, it may not be entitled to any further amounts unless issues such as waiver, commingling, or other equitable considerations required otherwise. In fact, under this hypothetical, the sole and separate property owner may claim monies from the community if there are no other pertinent factors.

10. Though Husband argues that it was an abuse of discretion to award a share of the increase in value after awarding 100% of the net distributable earnings, the primary arguments he makes to support this contention are (a) *Cockrill* permits receiving only an interest in profits or value, but

not both and (b) having received a fair salary for services, the community is not entitled to any further interest in the separate business. As we discuss at length in sections one and two above, we have rejected both these arguments.

11. Additionally, as Wife's counsel pointed out at oral argument, because this argument was not advanced below, certain issues were not developed in the trial court. These issues include commingling, waiver, and whether a different ratio should be applied to net earnings as contrasted with increase in value.

12. Wife requests attorneys' fees for the appeal under A.R.S. § 25–324, arguing that Husband's positions on appeal were unreasonable. We consider both parties to have taken reasonable positions in this appeal and decline to award Wife attorneys' fees.