NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

BARBARA STEWART, *Petitioner/Appellee*,

*v.*

GARY STEWART, *Respondent/Appellant*.

No. 1 CA-CV 12-0747
FILED 05-29-2014

Appeal from the Superior Court in Maricopa County
No.   FN2011-002414
The Honorable Sam J. Myers, Judge

**AFFIRMED IN PART, REVERSED IN PART; REMANDED**

COUNSEL

Dickinson Wright/Mariscal Weeks PLLC, Phoenix
By Marlene A. Pontrelli
*Counsel for Petitioner/Appellee*

Pearlstein Law Office PLLC, Phoenix
By Lynn M. Pearlstein
*Counsel for Respondent/Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Margaret H. Downie and Judge Diane M. Johnsen joined.

_____

**W I N T H R O P,** Presiding Judge:

¶1          Gary Stewart ("Husband") appeals from the allocation of property in the parties' decree of dissolution and the award of attorneys' fees to Barbara Stewart ("Wife").  For the following reasons, we reverse that portion of the decree related to the issue of Husband's compensation; we reverse the portions of the decree related to the issues of the life insurance policy, the loan to Husband's separate property business, and the Chase joint accounts, and remand for further proceedings consistent with this decision.  We affirm the portions of the decree related to the Wells Fargo investment account and the award of attorneys' fees to Wife.

**FACTS AND PROCEDURAL HISTORY**

¶2          Husband and Wife were married in 1996; each brought to the marriage a separately owned and operated business, and they continue to operate those businesses.  Husband is also an officer of his business.  In June 2011, Wife filed a petition for dissolution of marriage.

¶3          Relevant to this appeal, the parties disputed at trial:  (a) whether the community was adequately compensated during marriage for Husband's work at his separate property business; (b) the community nature of a life insurance policy insuring Husband and Wife; (c) the community nature of a Wells Fargo investment account (8700); (d) whether and to what extent Husband's pre-marital loan of $185,000 to his separate property business had been re-paid during marriage; and (e) the allocation of community funds in certain Chase joint accounts (5871) and (3014).  The parties also disputed whether Wife was entitled to attorneys' fees.

¶4          The family court ruled:  (a) Wife was entitled to half the amount the court found Husband's separate property business had under-compensated the community for Husband's labor in the last four years of marriage; (b) the entire life insurance policy was a community asset,

2

awarding each party half of its $900,000 cash-surrender value; (c) Husband's separate pre-marital deposits into the Wells Fargo investment account (8700) had been comingled and transmuted so the account had become community property; (d) Husband failed to demonstrate the pre-marital loan to his separate property business had not been paid back during marriage; and (e) Husband used community funds from the Chase joint bank accounts (5871) and (3014) for purposes not benefiting the community and, therefore, Wife was entitled to equalization payments totaling $71,612.70. The court also awarded Wife $54,160.57 in attorneys' fees and costs based on the disparity of the parties' financial resources. Husband filed a timely notice of appeal. We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1), (2) (West 2014).[1]

## DISCUSSION

I. *Compensation During Marriage*

¶5 Husband argues the family court erred when it determined the community had been under-compensated as a result of Husband's decision to reduce his annual salary from his separate business in the four years preceding the petition for dissolution of marriage, and in awarding Wife half of the amount of under-compensation. The court concluded "Husband breached his fiduciary obligation to the community by failing to take fair compensation for the community labor expended" from 2008 to 2011.

¶6 It is undisputed that as the owner of his separate property business Husband could set his own pay as an officer of the company. The parties also agree, and the record demonstrates, that beginning in 2008 Husband's salary as an officer decreased in comparison to previous years.

¶7 At trial, Wife sought to demonstrate that from 2008 to 2011 Husband's separate property business "under-compensated" the marital community for the labor expended by Husband and this "under-compensation" was the result of Husband's unilateral decision to take a

---

[1] We cite the current Westlaw versions of the applicable statutes and court rules unless changes material to our analysis have since occurred.

3

reduced salary.[2] Under Wife's under-compensation theory, the community could recover the difference between the compensation Husband should have received and the compensation Husband actually received because such deliberate under-compensation is a breach of Husband's fiduciary duty to the marital community. Implicit in Wife's argument is the conclusion that any under-compensation is community property. The classification of property as separate or community is a question of law we review *de novo*. *Bell-Kilbourn v. Bell-Kilbourn,* 216 Ariz. 521, 523, ¶ 4, 169 P.3d 111, 113 (App. 2007).

¶8 To demonstrate the compensation the community should have received for Husband's labor, Wife determined an annual "fair compensation" figure based on a standardized annual salary for corporate officers in the relevant industry using data provided by Husband's expert.[3] Wife then compared Husband's annual actual compensation to this "fair compensation" figure and argued that from 2008 to 2011 the marital community was under-compensated by $304,415. To show that the "fair compensation" figure was realistic, Wife's expert testified that Husband's business had sufficient cash flow to pay Husband the higher "fair compensation" amount during those years. Wife argued this under-compensation in the four years preceding dissolution proved a breach of fiduciary duty.

¶9 Husband rebutted this evidence by testifying that his declining compensation from 2008 to 2011 was the result of the general contraction of the economy and the negative economic trends in the relevant industry based on technological advances that reduced consumer

---

[2] For the purposes of this "under-compensation" analysis, pursuant to the expert reports and the arguments of counsel, the court appears to have considered as compensation only Husband's salary and the income from stock ownership of the separate property business. *See also* Section II, *infra* (discussing the payment of life insurance premiums as an additional form of compensation).

[3] Husband argues Wife inappropriately relied on the data supplied by his expert and intended for separate property business valuation pursuant to *Cockrill v. Cockrill,* 124 Ariz. 50, 52, 601 P.2d 1334, 1336 (1979), and *Rueschenberg v. Rueschenberg,* 219 Ariz. 249, 257, ¶ 34, 196 P.3d 852, 860 (App. 2008). We disagree. Regardless of what Husband intended this data to demonstrate, this evidence was properly before the family court to consider in determining "fair compensation."

demand. Using the same "fair compensation" measurement as Wife, Husband also argued the community was actually over-compensated throughout the life of the marriage because his annual actual compensation from 1996 to 2007 exceeded the "fair compensation" figure, off-setting any under-compensation from 2008 to 2011.

**¶10** The family court found that, as a result of Husband's unilateral business decision, the community was under-compensated from 2008 to 2011. As a result of this finding, the court concluded Husband breached his fiduciary duty to the community and awarded Wife half of the additional $304,415 of compensation the community would have received had Husband elected to take "fair compensation" during those years.

**¶11** Arizona courts acknowledge the existence of a fiduciary duty between spouses. *See Gerow v. Covill*, 192 Ariz. 9, 18, ¶ 40, 960 P.2d 55, 64 (App. 1998).[4] "Removal of community assets without spousal notice and/or approval can constitute a breach of [fiduciary] duty." *Id.* at 18, ¶ 40, 960 P.2d at 64. Wife relies entirely on her analysis of Husband's salary falling below the industry standard of "fair compensation," coupled with his ability to set his own pay, to establish Husband's breach of fiduciary duty to the community. In support of this argument, Wife cites *Gerow* and *Smith v. Smith*, 860 P.2d 634 (Idaho 1993). The facts of those two cases, however, belie Wife's argument.

**¶12** In *Gerow*, the husband was self-employed as an independent consultant through a sole proprietorship. *Gerow*, 192 Ariz. at 11-12, ¶¶ 2-5, 960 P.2d at 57-58. A few months after the wife filed a petition for dissolution, the husband incorporated a second, similar business with his sister-in-law listed as the sole shareholder, concealing this business from the wife. *Id.* The court concluded the husband's conduct breached his fiduciary duty to the marital community because he concealed the incorporation of the second business from the wife and used this concealed business to remove community assets without notice to the wife

---

[4] Husband urges us to distinguish *Gerow* from this case by focusing on the *Gerow* court's analysis of Arizona's Fraudulent Conveyance Act. *Gerow*, 192 Ariz. at 17, ¶¶ 33-36, 960 P.2d at 63. We note, however, the court in *Gerow* explicitly analyzed the claim of breach of fiduciary duty independent of the Act. *See id.* at 17-18, ¶¶ 37-40, 960 P.2d at 63-64.

and without compensation for the community. *Id.* at 18, ¶ 40, 960 P.2d at 64.

¶13  In *Smith*, the husband was a lawyer. In one case, the husband agreed to receive a reduced fee after his client elected to avoid an appeal by taking a settlement rather than attempting to collect the full court award. *Smith*, 860 P.2d at 643. The reduced fee was less than half the husband's hourly rate and also less than a one-third contingency fee on the settlement amount. *Id.* The court concluded the husband breached his fiduciary duty to his wife by accepting the reduced fee. *Id.*

¶14  In this case, Husband's conduct does not bear any of the indicia of a breach of fiduciary duty as established in *Gerow* or *Smith*. First, Wife had notice of the reduced compensation to the community by way of jointly filed tax returns from 2008 to 2010.[5] Second, Wife does not point to anything in the record suggesting she objected at the time to Husband's decision to take reduced compensation from his separate property business. Third, the breach in *Gerow* occurred after the filing of the petition for dissolution of marriage; in this case, Husband's declining compensation began four years prior to the filing of the petition for dissolution, and Wife does not point to anything in the record that suggests Husband's declining salary was a form of so-called "divorce planning." Fourth, the degree to which Husband's annual actual compensation varied from the annual "fair compensation" figure is not so drastic as to demonstrate that, on this evidence alone, Husband breached a fiduciary duty. In 2008, the first year in which Husband's salary fell below "fair compensation," the actual compensation was ninety-eight percent of the "fair compensation" figure; in 2009, the actual compensation was eighty-two percent of the "fair compensation" figure; and in 2010, actual compensation was fifty percent of the "fair compensation" figure.[6] Although the fifty percent shortfall in 2010 raises

---

[5]  We note the record does not contain tax returns from 2011.

[6]  In its decree, the family court found Husband received $25,000 of compensation in 2011; however, this figure only takes into account Husband's salary and does not include income earned through stock ownership. Similarly, the decree appears to compare a full year's "fair compensation" to Husband's reported half-year of actual compensation. On remand, for the purposes of the analysis recommended by Section II of this decision, the trial court should properly assess the actual

a concern, Husband adequately explains this shortfall by justifying his reduced salary on the basis of economic trends from 2008 to 2011, the undisputed evidence that his separate property business substantially declined in value over the life of the marriage, and evidence that, over the entirety of the marriage, his salary trended downward in comparison to the "fair compensation" benchmark.[7]  This explanation is contrasted with Wife's bare assertion that Husband breached his fiduciary duty based on a comparison between the "fair compensation" figure and Husband's annual actual compensation.  Thus, on this record, we conclude the family court erred by finding Husband's conduct breached a fiduciary duty pursuant to *Gerow*.[8]  We therefore vacate the under-compensation portion of the trial court's award to Wife totaling $152,207.50.

II.  *Life Insurance Policy*

¶15        Husband argues the family court erred by classifying the life insurance policy as community property and distributing half of the cash-surrender value of the policy to Wife.  We review *de novo* the family court's classification of property as separate or community.  *Bell-Kilbourn*, 216 Ariz. at 523, ¶ 4, 169 P.3d at 113.

¶16        Under the statutory framework differentiating separate property from community property, (1) "A spouse's real and personal property that is owned by that spouse before marriage . . . and the increase, rents, issues and profits of that property, is the separate property of that spouse," A.R.S. § 25-213(A), and (2) "All property acquired by either [spouse] during the marriage is the community property of [both spouses] except for property that is . . . [a]cquired by gift, devise or descent," A.R.S. § 25-211(A).  Thus, "Property takes its character as

---

compensation for 2011, taking into account the prorated share of compensation prior to the petition of dissolution.

[7]        The expert report valued the separate property business at $2,610,090 at the date of marriage and $1,118,250 at the date of dissolution.  At the beginning of the marriage, Husband's salary was 314% of the annual "fair compensation" figure; by 2007, Husband's salary was 145% of the annual "fair compensation" figure.

[8]        We reach this result without needing to address Husband's concerns regarding any selection bias from the family court's focus on the last four years of marriage rather than the full length of the marriage.

separate or community at the time [of acquisition] and retains [that] character throughout the marriage." *Bell-Kilbourn*, 216 Ariz. at 523, ¶ 5, 169 P.3d at 113 (quotation and citation omitted). As a result, "there is a strong presumption, rebuttable only by clear and convincing evidence, that all earnings during [marriage] are community in nature." *Cockrill v. Cockrill*, 124 Ariz. 50, 52, 601 P.2d 1334, 1336 (1979) (citation omitted).

### A. Community Interest in the Policy

¶17 The family court found (a) Husband acquired the insurance policy in 1995 "in contemplation of marriage to Wife," (b) "Both Husband and Wife continue[d] to be named insureds on the policy" during marriage, (c) "Husband failed to show whether any premiums were paid prior to marriage," and (d) "Although Husband claims Trade Printers . . . paid the premiums, Husband[] admits that he was the owner of the policy." From these facts, the court concluded Husband did not "show by clear and convincing evidence that the policy, in which the premiums were paid for by Husband's separate property business during the marriage, is the separate property of Husband," and therefore Wife was entitled to half the cash-surrender value of the policy.

¶18 Contrary to the conclusion of the family court, the record demonstrates the insurance policy was acquired by Husband in 1995 prior to marriage.[9] Thus, the policy is Husband's separate property. *See* A.R.S. § 25-213(A).

¶19 That determination, however, does not end the analysis. *See Rueschenberg v. Rueschenberg*, 219 Ariz. 249, 257, ¶ 34, 196 P.3d, 860 (App. 2008). Instead, the family court must determine on remand whether and to what extent the community contributed to premium payments during marriage. *Cockrill*, 124 Ariz. at 54, 601 P.2d at 1338 ("[P]rofits, which result

---

[9] Wife argues on appeal the insurance policy is community property because "the policy is an asset initially acquired by Husband *in contemplation of marriage*." (Emphasis added). However, because Wife does not provide any citations to the record or to legal authorities to develop this argument, we will not consider it on appeal. *See* ARCAP 13(a)(6) (requiring an opening brief to set forth "[a]n argument which shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on."); ARCAP 13(b) (same requirement for answering brief).

from a combination of separate property and community labor, must be apportioned accordingly."). In this case, the community could have contributed to the premiums during marriage by direct payment or by considering the premium payments made by Husband's separate property business as income-substitutes drawn from the profits of that business in the years the business did not otherwise provide Husband with "fair compensation." *See* Section I, *supra*.

¶20 In *Cockrill*, our supreme court addressed the methods by which a family court might "achieve substantial justice between the parties" by apportioning the profits or increase in value from one spouse's separate property during the life of the marriage. 124 Ariz. at 54, 601 P.2d at 1338. Although the family court may choose any method that will achieve substantial justice between the parties, *Rueschenberg*, 219 Ariz. at 255, ¶ 26, 196 P.3d at 858, one of the methods addressed in *Cockrill* may be particularly appropriate in this case.

¶21 The court may "determine the reasonable value of the community's services and allocate that amount to the community, and treat the balance as separate property attributable to the inherent nature of the separate estate." *Cockrill*, 124 Ariz. at 54, 601 P.2d at 1338 (citation omitted). In the context of an insurance policy, the court might achieve substantial justice between the parties by apportioning the cash-surrender value of the policy on the basis of the respective contributions to the premium payments made by the community and by Husband's separate property business.

¶22 This analysis would require the family court to determine whether any premium payments made by Husband's business should be treated as payments by the community. Under this approach, for any year in which the business made a premium payment, the court would need to identify the annual "fair compensation" for the year and compare Husband's annual actual compensation to this figure. If Husband's actual compensation met or exceeded "fair compensation," the court would allocate the premium payment made that year to the separate property business. If actual compensation that year fell below "fair compensation," the insurance premium would be treated as compensation and allocated to the community until a "fair compensation" benchmark is reached; after "fair compensation" is reached, the remainder of the annual premium would be allocated to Husband's separate property. The court would then determine the proportion of the total premium amounts paid by the community and by Husband's separate property business, and apportion the cash-surrender value of the policy accordingly.

¶23 A simple example illustrates this method. Just prior to marriage, a spouse acquires an insurance policy; the marriage dissolves ten years later. The annual premium for the policy is fixed at $10. At the time of dissolution, premium payments total $100 and the policy has a cash-surrender value of $120. In two years during the life of the marriage, the annual premium on the policy was paid by a check written on the community savings account. The other eight premiums were paid by a business that is the sole and separate property of the spouse who originally acquired the policy. The family court finds that in five of those years, the separate property business under-compensated the community by $4 each year. To achieve "substantial justice between the parties," the court would treat $4 worth of premium payments as having been made by the community in each of the five years in which the community was under-compensated by the separate business. Thus, out of the total $100 in premium payments, the court would treat $40 (or forty percent) as having been paid by the community and $60 (or sixty percent) as having been paid by the spouse's separate property. The court then would allocate 40 percent of the cash-surrender value of the policy to the community and 60 percent to the spouse who acquired the policy.

### B. Gift

¶24 In this case, the family court alternatively concluded that Husband gifted the insurance policy and its cash-surrender value to the community by naming both parties as insureds on the policy as a form of estate planning. The record does not support this conclusion. The family court relied on *In re Marriage of Inboden*, which held that "when a spouse places separate property in joint tenancy with the other spouse a presumed gift occurs[.]" 223 Ariz. 542, 544, ¶ 9, 225 P.3d 599, 601 (App. 2010). Assuming without deciding that *Inboden* would apply to non-real property, the evidence does not establish that Husband and Wife ever "jointly-owned" the life insurance policy. Although "the mere form of a life insurance policy is [not] conclusive on either the issue of ownership or whether a gift has been made[,]" *Neely v. Neely,* 115 Ariz. 47, 51, 563 P.2d 302, 306 (App. 1977), there was no evidence presented at trial to establish the essential elements of a gift. To establish a gift, "there must be donative intent, delivery and a vesting of irrevocable title upon such delivery." *Id.*; *see also In re Marriage of Berger,* 140 Ariz. 156, 160, 680 P.2d 1217, 1221 (App. 1983) (holding that donative intent is based on all circumstances and "not inferred simply because of a marital relationship").

¶25 On this record, Wife cannot establish donative intent. Obtained in 1995 prior to marriage, the insurance policy was a "first-to-

die" policy with Husband and Wife named as the insureds. According to the policy, in the event of Wife's death, Husband was the named beneficiary; in the event of Husband's death, prior to 2003 his estate was the named beneficiary and after 2003 his separate property business was the named beneficiary.[10] Thus, if Husband died first, Wife would receive a portion of the policy only inasmuch as she received a portion of his estate, either directly as a beneficiary or through testamentary transfer of Husband's separate business; Wife was never a direct beneficiary of this policy. Further, on this sparse record, the only indication of the parties' intent is Husband's testimony that this insurance policy was not intended to be an estate planning tool. There was no evidence suggesting that Husband intended to gift Wife an ownership interest in the policy. We therefore reject this alternative conclusion.

### C.    On Remand

¶26        Two related issues must be addressed on remand. First, the family court must identify the source and amount of the premium payments. While the court found Husband's separate property business paid $900,000 in premiums during the marriage, citing a report by Wife's financial expert, that report does not provide any direct proof of those payments. Instead, the business' corporate tax returns show that it paid for "officer life insurance premiums" during the marriage, in addition to expenditures paid in 1995 and 1996 before the marriage.[11]

¶27        Second, although the issue is not raised by either party on appeal, on remand the court must also determine how to treat the $300,000 loan made against the life insurance policy. We have held that the life insurance policy was Husband's separate property, but that the

---

[10]        The family court concluded Husband breached his fiduciary duty to Wife by converting a community asset to his separate property when Husband substituted his separate property business for his estate as a beneficiary of the policy. Because the insurance policy remained Husband's separate property during marriage, this substitution is irrelevant.

[11]        There are no corporate tax returns for 2000, 2001, or 2011 for Husband's separate property business in the record. Nor do the parties point to complete records of premium payments during the marriage. Thus, on this record, it is unclear which annual payments were made from which sources.

community may be entitled to be some share of the value of the policy based on the premiums paid during the marriage. We express no opinion on the apportionment of this $300,000 loan between community and separate property. This issue also does not affect our decision regarding the Wells Fargo investment account (8700) into which the $300,000 amount was deposited. *See* Section III, *infra*.

**¶28**         In sum, we conclude the family court erred in characterizing the life insurance policy as community property. The policy is Husband's separate property because he acquired it before marriage. However, some portion of the cash-surrender value of the policy appropriately may be allocated to the community as a result of premium payments made with community funds or with funds owed to the community by Husband's separate property business for his labor. We therefore reverse that portion of the decree concluding that the life insurance policy is a community asset and the award of half the policy's cash-surrender value to Wife. We remand the resolution of this issue to the family court for further analysis and judgment consistent with our decision.

### III.     *Wells Fargo Investment Account (8700)*

**¶29**         The family court concluded the entire Wells Fargo investment account (8700) should be considered community property and divided equally between the parties because the assets of the account included comingled community and separate property. Husband argues the court erred by awarding Wife half of the investment account, contending most of the money is his separate property acquired prior to marriage and any community assets are easily traceable on the basis of deposits.

**¶30**         The character of property is determined at the time of acquisition, *Bell-Kilbourn*, 216 Ariz. at 523, ¶ 4, 169 P.3d at 113, and property acquired by a spouse prior to marriage remains that spouse's separate property, A.R.S. § 25-213(A). However, separate property may be transmuted into community property when there is commingling to the degree that "the identity of the property as separate or community is lost." *Potthoff v. Potthoff*, 128 Ariz. 557, 562, 627 P.2d 708, 713 (App. 1981). Although the mere fact of commingling is insufficient to transmute the entire account to community property, *see Guthrie v. Guthrie*, 73 Ariz. 423, 426, 242 P.2d 549, 551 (1952), "the burden is upon the person claiming that the commingled funds, or any portion of them, are separate to prove that fact and the amount by clear and satisfactory evidence." *Cooper v. Cooper*, 130 Ariz. 257, 259-60, 635 P.2d 850, 852-53 (1981) (citation omitted).

¶31        In this case, Husband opened a Franklin Templeton account solely in his name prior to marriage, and the account was worth approximately $508,000 on the date of marriage; at that time, the assets of this account were his separate property.  In 2004, when the assets of the Franklin Templeton account were transferred to a Wells Fargo advisory account (5581), this account had increased in value to approximately $670,000.  In August 2005, the separate property funds in the Wells Fargo advisory account (5581), by then valued at approximately $780,000, were transferred to Wells Fargo investment account (8700), the account at issue on appeal.  Although both Wells Fargo accounts were held solely in Husband's name, Husband acknowledges he deposited community funds into Wells Fargo investment account (8700).  From the creation of that account to the date of dissolution, the account's investment holdings included a mixture of cash, money market accounts, fixed income securities, and mutual funds.  In June 2011, when the petition for dissolution was served, the Wells Fargo investment account (8700) had a balance of $1,267,909.20.[12]

¶32        Husband argues the identity of the community and separate property is not lost because the deposits of community funds are traceable and there were no withdrawals from the investment account after the deposit of community funds.[13]  Although Husband is correct that the

_____

[12]        The decree states the Wells Fargo investment account (8700) had a balance of $1,234,677 as of January 31, 2011, while Husband states the account had a balance of $1,266,053 as of the date of trial.  The relevant balance is that as of June 22, 2011, the date the petition was served, because that is the date the community's interest in the account ended.  *See* A.R.S. § 25-211(A)(2).

[13]        There was, however, one withdrawal of $296,000 contemporaneous with a $300,000 deposit.  The source of this deposit is the life insurance policy discussed in Section II.  Unlike the other community deposits, this deposit is fully traceable because it remained in the account for only a few days before withdrawal and had only a negligible effect on the earnings of this account.  On remand, the trial court must consider whether this $300,000 amount is community or separate property.  The court should not base its decision on the sum's brief stay in the community account; instead, the court should analyze this sum pursuant to the principles discussed in Section II of our decision.

        Wife also asserts that Husband made "cash withdrawals" from the account; however, because Wife cites nothing in the record to support that

*deposits* are traceable, the testimony by Wife's expert and the nature of the investment account at issue in this case lead us to conclude the *earnings* on those deposits are not traceable on this record. The investment account included money market accounts, fixed income securities, and mutual funds associated with varying yields, so that the community and separate funds have comingled to the point of obscurity. Wife's expert also testified that he could not determine which account investments belonged to which source of funds.

¶33        On appeal, Husband suggests this court treat the value of the account prior to the transfer of assets into Wells Fargo investment account (8700) as separate property, awarding Husband that amount from the total value at the date of dissolution; Husband then suggests this court treat all deposits into and increases in the value of the account after that point as community property. While this may have been an approach to suggest to the family court, we are not the trier of fact. We further note that Husband's proposed solution does not apportion the losses suffered by the account during the relevant time period.[14]

¶34        Husband also argues the family court erred because the community deposits make up a negligible part of the whole account. *Cf. Noble v. Noble*, 26 Ariz. App. 89, 95-96, 546 P.2d 358, 364-65 (1976) ("The [principle that] commingling of separate and community funds into one account does not transmute the entire account into a community account so long as the funds remain traceable . . . is especially true where the community funds commingled are negligible in comparison to the separate funds." (citation omitted)). We disagree with Husband's characterization of the community funds as "negligible." The New Oxford American Dictionary defines "negligible" as "so small or unimportant as to be not worth considering." The New Oxford American Dictionary 1137 (2d ed. 2005). Here, the deposits Husband concedes are community funds make up a non-negligible twenty-three percent of the total value of the account at the time the petition for dissolution was served, even without accounting for any return on those community

---

statement, we will not consider this argument on appeal. *See* ARCAP 13(a)(6), (b).

14        For example, the total account value decreased from August 2008 to August 2009.

deposits.[15]  For these reasons, we affirm the award to Wife of half the total balance of the funds in Wells Fargo investment account (8700).

IV.  *Loan to Husband's Separate Property Business*

**¶35**        Husband's sole and separate business borrowed $185,000 from Husband before the marriage, and hundreds of thousands of dollars more from the community during the marriage.  The family court found the business had repaid $307,304 but owed $594,454 at the time of dissolution.  Evidence at trial was that loan payments from the business during the marriage were deposited into the community bank account, and Wife's expert testified that the business had not repaid the loan Husband made prior to the marriage.

**¶36**        Husband argues the court erred when it impliedly concluded the business had repaid the $185,000 he loaned the company before marriage.  He argues the $594,454 that the court found the business owed to the community should be reduced by $185,000, the amount still owing on his pre-marital loan to the business.  The court found Husband failed to prove the existence of the pre-marital loan because it was not evidenced in writing.  Accordingly, the decree of dissolution treats the loan as a loan from the community, requires Husband to pay half of the present $594,454 loan balance to Wife and awards the note to Husband. We review the family court's factual findings under a clearly erroneous standard, *see Hrudka v. Hrudka,* 186 Ariz. 84, 91, 919 P.2d 179, 186 (1995), but we review the characterization of the note as separate or community property *de novo*.  *See Bell-Kilbourn,* 216 Ariz. at 523, ¶ 4, 169 P.3d at 113.

**¶37**        As a preliminary matter, we conclude the family court erred by finding Husband failed to prove the existence of a pre-marital loan from Husband to his separate property business.  The court relied on the absence of a written note to find that no loan existed prior to marriage. The absence of a written note evidencing a loan, however, does not negate uncontroverted testimony at trial of the existence of such a loan.  *Cf.* A.R.S.

---

[15]        Husband also appears to invoke that part of the decree that permits the parties to stipulate to the retention of a third-party mediator to determine the apportionment of co-mingled accounts; however, by its terms this portion of the decree is inapplicable without the consent of both parties and Wife does not appear to stipulate to this proposed method of apportionment.  As a result, we need not reach the merits of such an approach.

§ 12-543(1) (entitled "Oral debt"). In this case, ample evidence in the record demonstrates the existence of a pre-marital loan: Husband cites the business valuations conducted in 1996 and 1997 as proof of the existence of a pre-marital loan; Wife testified that she knew of the $185,000 pre-marital loan balance in 1996; and Wife's expert also testified about Husband's pre-marital loan and assumed in his report that it had not been repaid.

¶38      With the existence of the pre-marital $185,000 loan established, the issue becomes whether Husband's separate property business repaid the pre-marital loan prior to service of the petition for dissolution.

¶39      Property acquired during marriage is presumed to be community property. A.R.S. § 25-211(A). "[T]he spouse seeking to overcome the presumption has the burden of establishing a separate character of the property by clear and convincing evidence." *Thomas v. Thomas*, 142 Ariz. 386, 392, 690 P.2d 105, 111 (App. 1984). Therefore, the court erred by placing the burden on Husband to demonstrate the loan payments by his separate property business were community property; instead, Wife bears the burden to prove that these payments to the community were, in fact, payments to Husband on the pre-marital portion of the loan.

¶40      Turning to the evidence, Husband's expert report stated the separate property business had paid the community $307,304 during the marriage. The record does not establish whether these loan payments were applied to the balance on the separate pre-marital loan or the subsequent community loans. In her testimony, Wife could not say whether the pre-marital loan had been paid. The evidence establishes that payments from the separate property business went into a community bank account. Assuming that at least a portion of these payments were loan repayments, Wife failed to establish that any loan payments were designated to repay the pre-marital loan. Because Wife failed to meet her burden, we reverse that portion of the decree awarding Wife half the outstanding loan balance and remand for reconsideration of this issue consistent with this decision.

      V.    *Division of Chase Joint Accounts (5871) and (3014)*

¶41      The family court found Husband used Chase joint accounts (5871) and (3014) to pay separate expenses and concluded Wife was entitled to half the amount Husband spent on these expenses. We review

the court's distribution of community property for an abuse of discretion, *Bell-Kilbourn*, 216 Ariz. at 523, ¶ 4, 169 P.3d at 113, and we will not disturb the court's decision "[u]nless it clearly appears that the trial judge has mistaken or ignored the evidence." *Armer v. Armer*, 105 Ariz. 284, 289, 463 P.2d 818, 823 (1970).

¶42 Husband contends the court's findings of fact are clearly erroneous and Wife was not entitled to reimbursement because she had already withdrawn her share of the funds in these community accounts. Wife did not respond to this issue on appeal. Although failure to respond to a contested issue may constitute a confession of error, *Hecla Mining Co. v. Indus. Comm'n*, 119 Ariz. 313, 314, 580 P.2d 774, 775 (App. 1978), we exercise our discretion to address the merits of Husband's argument and to clarify any issues that might arise on remand.

¶43 The decree stated Wife received $15,600 from these community accounts. Wife admitted in her testimony, however, that she withdrew an additional $35,000 from the joint accounts after service of the petition for dissolution; the July 2011 statement for Chase joint account (5871) appears to reflect this withdrawal. Husband identified the $35,000 withdrawal in the joint pretrial statement and in his proposed findings of fact and conclusions of law order, but the family court apparently overlooked this evidence and did not account for this $35,000 in allocating the funds in the joint accounts.

¶44 Husband also contends that he used this account to pay $12,015.88 of expenses that benefitted Wife. Wife testified that Husband paid the utilities for her Flagstaff home from this account, and there is evidence that Husband paid Wife's American Express charges after the date the petition for dissolution was served. Although there was no direct testimony regarding Husband's payment of Wife's credit card charges, the exhibits establish these payments, and Husband raised this issue in his proposed findings of fact regarding reimbursement.

¶45 We reverse that portion of the decree awarding Wife reimbursement for Husband's use of the community funds in the Chase joint accounts (5871) and (3014). On remand, the family court should consider the total amount of funds Wife received and any expenses Husband paid on Wife's behalf from these joint accounts in calculating any reimbursement to Wife.

VI. *Award of Attorneys' Fees*

¶46        The family court awarded Wife $54,160.57 in attorneys' fees and costs based on the disparity in the parties' financial resources and the reasonableness of the parties' positions. We review the family court's award of attorneys' fees under an abuse of discretion standard. *Hrudka,* 186 Ariz. at 94-95, 919 P.2d at 189-90.

¶47        The decree does not indicate whether it found Husband's positions unreasonable; the decree does state that Husband has substantially greater assets than Wife. Pursuant to A.R.S. § 25-324(A), the trial court may award fees where there is a financial disparity between the parties. *See Magee v. Magee,* 206 Ariz. 589, 593, ¶ 18, 81 P.3d 1048, 1052 (App. 2004) (holding that an applicant need not be unable to pay his or her own fees, but that relative financial disparity "is the benchmark for eligibility."). Given the resolution on appeal, the financial disparity between the parties will likely not change on remand. Accordingly, the court did not abuse its discretion in awarding Wife her attorneys' fees and costs at trial.

¶48        Wife requests an award of attorneys' fees on appeal pursuant to A.R.S. § 25-324. After considering the statutory factors, in an exercise of our discretion we decline to award Wife attorneys' fees.

## CONCLUSION

¶49        We reverse that portion of the decree of dissolution of marriage related to the issue of compensation and vacate the award to Wife associated with this issue. We reverse and remand that portion of the decree related to the life insurance policy and vacate the award associated with this issue; on remand, the community is entitled to reimbursement for the premiums paid by community funds or labor, but not the entire cash-surrender value. We reverse that portion of the decree related to the loan to Husband's separate property business, vacate the associated award of half the loan value to wife, and remand the issue to the family court consistent with the presumption that loan payments received during the marriage were repayments of the community loan. We affirm that portion of the decree related to the apportionment of comingled funds in Wells Fargo investment account (8700). We reverse that portion of the decree related to the division of assets in the Chase joint accounts (5871) and (3014), vacate the associated award, and remand the issue to the family court for reconsideration, including the total funds Wife received from the accounts and any expenses Husband paid on

Wife's behalf from these accounts after the petition for dissolution was served. Finally, we affirm the award of attorneys' fees and costs to Wife at trial. Wife has requested an award of fees on appeal. In the exercise of our discretion we deny that request.



Ruth A. Willingham · Clerk of the Court
FILED: gsh